SHEPLE & WARNER *v.* GEORGE W. PAGE AND DANIEL W.
PAGE.

In an action on the case in the nature of a conspiracy, the gist of the action is the damage to the plaintiff; and not the conspiracy.

When a conspiracy is charged in a declaration between two or more, the acts of one in pursuance of the conspiracy are the acts of all in legal contemplation and may be alleged in such case, in the declaration, as the individual acts of the one.

The plaintiffs in their declaration alleged that they and D. W. P. had been copartners in trade and that D. W. P. had sold out to them his interest in the concern and that the plaintiffs had agreed to pay all the debts against the firm, and that after the dissolution D. W. P. had conspired with G. W. P. to defraud them; and for that purpose D. W. P. made and delivered to G. W. P. certain notes in the name of the firm, and antedated them before the dissolution, and delivered them to G. W. P. with the *intent,* that he should present them for payment; which was afterwards done and the note paid; the said G. W. P. representing that the notes were just demands and given to him at the time of their dates for goods sold by him to the firm;

In such case it was held that a charge io the jury directing them; "if they found, the notes were fabricated by the defendants after the dissolution of the partnership with a view to make the plaintiffs chargeable with them as stated, and that G. W. P. then in furtherance of the original design, *induced* the plaintiffs to pay the same, without disclosing the fact that they were set on foot subsequently to the dissolution of the partnership, it was such a fraud as would entitle the plaintiffs to a verdict;" was not erroneous, and a new trial was refused.

THIS was an action on the case in three counts. The dedefendants severally pleaded not guilty.

At the November term of the county court, 1836, the cause was tried, and the jury found the defendant, Daniel W. Page guilty, and the other defendant, not guilty. The plaintiffs reviewed, and, by leave of court, filed the following additional count to the declaration, viz:

And also in a plea of the case for that the said plaintiffs and said Daniel W. Page and one Reuben Crosby heretofore to wit, at Lowell aforesaid, from the 13th day of September, A. D. 1833, to the 20th day of December, A. D. 1833, were partners in company doing business at Lowell aforesaid as merchants under the name and title of Crosby, Page, & Co. and, as such partners, had contracted sundry debts and liabilities and become obligated to pay sundry sums of money to sundry persons for goods and other property delivered to the aforesaid partners in company during the term last aforesaid.

WASHINGTON,
March,
1840.

Sheple &
Warner
v.
Page, et al.

And afterwards, to wit, on the said 20th day of December, A. D. 1833, at Lowell aforesaid, the said Reuben Crosby sold, assigned, transferred and delivered over to the said plaintiff and said Daniel W. Page all his the said Reuben Crosby's right, title, interest and claim upon, in or unto the goods and chattels, rights and credits appertaining or in any way belonging to the said firm of Crosby, Page & Co. and relinquished and released to the said plaintiffs and said Daniel W. Page all his the said Crosby's interest in the partnership property of the said firm of Crosby, Page & Co. and retired from said firm and ceased to have any interest therein.

And the said plaintiffs and said Daniel W. Page, then and there, in consideration of such sale, tranfer and assignment of his the said Crosby's interest in said partnership property of the said firm of Crosby, Page & Co. to the said plaintiffs and said D. W. Page, assumed upon themselves and then and there promised the said Reuben Crosby to save him harmless and indemnified from all cost charges and liabilities by him before that time incurred by reason of his the said Crosby having been a partner in the said firm of Crosby, Page, & Co. or take no benefit from the aforesaid assignment and tranfer. Whereby and by reason whereof the said plaintiffs and said Daniel W. Page became liable to pay all the debts, which had before that time been contracted by the firm of Crosby, Page, & Co. and to indemnify and save the said Crosby harmless from all cost, charges and liabilities which he the said Crosby had incurred by reason of his having been a partner in said firm of Crosby, Page, & Co. or take no benefit for the aforesaid sale and assignment.

And said plaintiffs further say that the said plaintiffs and said Daniel W. Page, after said Crosby had retired from said firm of Crosby, Page, & Co. and ceased to have any interest therein, heretofore, to wit, at Lowell aforesaid, from the 20th day of December, A. D. 1833, to the 18th day of October, A. D. 1834, continued partners in company doing business as merchants at Lowell aforesaid under the name and firm of Daniel W. Page, & Co. and the plaintiffs and said Daniel W. Page, during the time aforesaid, as such partners, had contracted sundry debts and become liable to pay sundry

sums of money to sundry persons, for property delivered to
the said firm of Daniel W. Page & Co.

And the said Daniel W. Page, afterwards, to wit, on the
18th day of October, A. D. 1834, at Lowell aforesaid, sold, assigned, transferred and delivered to the said plaintiffs all his the said Daniel W. Page's right, title, interest, estate, claim and demand upon, in or unto all the partnership property and effects of the firm of Daniel W. Page, & Co. and the said plaintiffs then and there, in consideration of such sale, assumed upon themselves and then and there faithfully promised said Daniel W. Page to pay all debts contracted or liabilities in any way incurred by the said firm of Crosby, Page & Co. and the said firm of Daniel W. Page & Co. and to save the said Daniel W. Page harmless and indemnified from all cost, charges or claims upon him on account of his having been a partner in the firms of Crosby, Page & Co. and Daniel W. Page & Co.

And the said Daniel W. Page and George W. Page after such sale and transfer of all his the said Daniel W. Page's interest in the said firm of Daniel W. Page & Co. as aforesaid to the said plaintiffs, and after the said Daniel W. Page had retired from the said firm of Daniel W. Page & Co. and ceased to have any interest therein, falsely and fraudulently combined and conspired to cheat and defraud the said plaintiffs out of a large sum of money, and, to effect that object, the said Daniel W. Page falsely and fraudulently made, executed and delivered to the said Geo. W. Page in the name and by the style of partnership of Crosby, Page & Co. three promissory notes, one bearing date September 20th, A. D. 1833, for three hundred and eighty seven dollars and forty nine cents, payable to said George W. Page or his order on demand with interest annually—one bearing date the 22d day of October, A. D. 1833, for three hundred and forty two dollars and seventy five cents, payable to the said George W. Page or his order on demand with interest annually after four months, and one other note bearing date the 13th day of November, A. D. 1833, for the sum of one hundred and forty dollars and seventy nine cents payable to the said George W. Page or order on demand with interest annually—he the said Daniel W. Page then and there well knowing that said last mentioned promissory notes were made, executed and deliver-

WASHINGTON,
March,
1840.

Sheple &
Warner
v.
Page, et al.

ed as aforesaid by him the said Daniel W. Page to the said George W. Page (after the dissolution of said partnership of Crosby, Page & Co. and after the dissolution of said partnership of Daniel W. Page & Co.,) without any consideration, and for the purpose of defrauding the said plaintiffs out of the said several sums of money in said notes specified, by enabling the said George to obtain the payment of said sums of money in said notes specified from said plaintiffs. And the said George W. Page, then and there well knowing that said notes were made, executed and delivered by the said Daniel W. as aforesaid without any consideration and that the said Daniel W. had no right or authority to make, execute and deliver the same, and that said notes were made executed and delivered for the purpose of defrauding the said plaintiffs of said several sums of money in said notes specified, and without their knowledge, privity or consent, falsely and fraudulently received said notes for the purpose of collecting and receiving from said plaintiffs the said several sums of money in said notes specified. And the said George W. Page, afterwards, to wit, on the 10th day of June, 1835, at Waterbury aforesaid, presented said notes to said plaintiffs for payment and then and there falsely and fraudulently affirmed and stated to said plaintiffs that said notes were made executed and delivered by the said D. W. Page in the name of the said firm of Crosby, Page & Co., to the said George W. Page, at the several times they respectively bear date, in payment for goods, then sold by the said George W. Page to the said Crosby, Page & Co. and that the same were justly due and that the goods, in payment of which said notes had been executed and delivered, had never been paid for in any other manner than by the execution and delivery of said notes, and that unless said plaintiffs paid the said notes, he the said George W. would commence a suit upon the same against the said plaintiffs, to compel payment of the same, he the said George W. Page then and there well knowing that said notes were not made, executed and delivered by said Daniel W. Page at the several times they respectively bore date and that the same had not been given in payment for goods sold by the said George W. Page to the said firm of Crosby, Page & Co. but that the same were made, executed and delivered by the said Daniel W. Page to the said George W. Page,

WASHINGTON,
March,
1840.

Sheple &
Warner
v.
Page, et al.

long after the dissolution of the partnership of the said firm of Crosby, Page & Co. and long after the dissolution of the partnership of the firm of Daniel W. Page & Co. without any consideration, and for the express purpose of enabling the said George W. Page and Daniel W. Page to defraud said plaintiffs out of the said several sums of money in said notes specified.

And said plaintiffs further say that the business of the said firm of Crosby, Page & Co. was mostly transacted by the said Crosby and Daniel W. Page in person, and that the business of said firm of Daniel W. Page & Co. was mostly transacted by the said Daniel W. Page in person, and that most, if not all the goods purchased for either of said firms, were purchased by the said Daniel W. Page in person, and that neither of said plaintiffs had any particular knowledge of the management of said business but trusted the same entirely to the discretion and management of said Daniel W. Page, and that they, relying upon the aforesaid false and fraudulent representations of said George W. Page, and verily believing that said notes had been executed by the said Daniel W. Page in the name of Crosby, Page & Co. at the several times they bore date, and delivered to the said George W. Page in payment for goods sold by the said George W. Page to the said firm of Crosby, Page & Co., and being then ignorant that said notes had been executed and delivered to the said George W. Page, without any consideration, long after the dissolution of the firm of Crosby, Page & Co., and long after the dissolution of the firm of Daniel W. Page & Co., then and there paid to the said George W. Page said several sums of money in said notes specified, with a large amount of interest thereon and cost, and took up said notes. By means of which false and fraudulent conspiracy and combination of the said Daniel W. and George W. Page and their false deceitful and fraudulent representations, said plaintiffs have been dafrauded out of a large sum of money, to wit, the sum of one thousand dollars."

At the April term of the county court, 1837, the plaintiffs abandoned the three original counts of the declaration and the cause was tried upon the new count only. Upon this trial the plaintiffs introduced testimony tending to prove that, previous to December, 1833, the plaintiffs and one Crosby and

## 524 CASES IN THE SUPREME COURT

WASHINGTON,
March,
1840.

Sheple &
Warner
*v.*
Page, *et al.* one of the defendants, D. W. Page, had been in partnership in mercantile business at Lowell, Vt., that in that month Crosby sold his interest in the concern to the other partners, who continued the business at the same place, until the month of October, 1834, when D. W. Page sold out his interest in the concern to the plaintiffs; that, before Crosby left the concern, one William S. Flint had agreed to sell a lot of land in Hardwick to D. W. Page for $1020, to be paid in goods, and it was agreed that the goods should go into the concern, and the goods were paid for by the firm. George W. Page, by agreement between himself and D. W. Page, agreed to furnish the goods, and, by an arrangement among the parties, Flint, in September, 1833, went as far towards New York city as Troy, N. Y. with George W. Page, for the purpose of receiving the goods where he received a part of the amount, which were delivered to him, and George W. Page agreed that the firm might receive the balance due them at Barre, where he was in trade, which they did receive, making in the whole sufficient to pay what was their due, and the deed of the farm was delivered to D. W. Page, which Flint had agreed to retain for the security of the farm until the goods were delivered. At the time Flint went to receive the goods of George W. Page, he took an order for the amount of goods, signed by D. W. Page and expressed to be for value received, but that was not intended to vary the former contract and was taken to satisfy George W. Page, but, as he made no objection to the delivery of the goods, the order was never delivered to him.

The plaintiffs also gave testimony tending to show that, subsequently to the dissolution of the partnership between plaintiffs and D. W. Page, the said D. W. Page, upon the pretended consideration of these goods, executed the notes described in the plaintiffs' declaration in the name of the former firm of Crosby, Page & Co., and this with the knowledge and at the solicitation of George W. Page and to enable him to defraud the plaintiffs, when both defendants well knew that nothing was due from plaintiffs to them on that account, and that these notes were thus fabricated and antedated.

The defendants also gave testimony tending to show that sometime in the month of June, 1835, George W.

Washington,
*March,*
1840.

Sheple &
Warner
*v.*
.Page, *et al.*

Page, with his attorney, called upon Sheple and presented the notes and requested payment, that Sheple objected to paying the notes, saying that the goods were paid for otherwise and that these notes ought not to have been given. Page replied that it was expected the goods would have been turned towards the farm, at first, but afterwards other arrangements were made, but no intimation was proved to have been made that the notes were executed at a time subsequent to the dissolution of the partnership, or to the time they bore date. It also appeared that at this time Sheple finally concluded to give his note for the amount of these three notes described in the declaration, which he did, with the expectation that he should soon procure a note signed by himself, Warner the other plaintiff, and one Flint, which he did, and this note was subsequently sued and collected by due course of law. The defendants requested the court to charge the jury that the payment by the plaintiffs, of the money in the manner above stated, and their omission to make any defence to the action on the note given for the amount of the three notes, thus fraudulently obtained, would prevent the plaintiffs' recovery, even if all the facts alleged in the last count of the declaration were proved, and that plaintiffs could not recover, if they or Sheple knew at the time he gave the new note, that the other notes were given up on the sole consideration of the goods so as aforesaid turned into the Lowell store. But the court refused to charge as requested, but did charge them, among other things, in substance, that if the notes in dispute were given by D. W. Page to Geo. W. Page in the name of Crosby, Page & Co., subsequently to said D. W. Page selling his interest in the concern to the plaintiffs, and antedated to enable said G. W. Page to defraud the plaintiffs, and the plaintiffs or either of them first gave a new note for the amount and subsequently both signed a note for the amount, with surety, and suffered a judgment to be recovered on it, believing that the first notes had been executed by D. W. Page, at the time they bore date and in the course of his ordinary business connexion with the concern, although the plaintiffs knew the notes were given for the goods aforesaid, still the plaintiffs could recover, otherwise the defendants must recover.

The jury returned a verdict against both the defendants

WASHINGTON,
March,
1840.

Sheple &
Warner
v.
Page, et al.
and a judgment was rendered thereon for the plaintiffs. The defendants moved in arrest of judgment for the insufficiency of the declaration, but the county court overruled the motion. The defendants excepted to the charge of the court and their decision overruling the motion in arrest.

The cause was afterwards reviewed by the defendant, George W. Page, against whom there had been but one verdict and judgment, and, at the November term of the county Court, 1839, was again tried between the plaintiff and the said George W. Page and, upon this trial, it appeared that a mercantile partnership under the name of Crosby, Page and Co. consisting of one Crosby, D. W. Page, one of the defendants, and the plantiffs, existed at Lowell in this state, on the 13th day of September 1833 ; that on the 20th of December, 1833, Crosby sold his interest in the concern to the other partners, and the business was carried on in the name of D. W. Page and Co. until the 18th day of October, 1834, when the plaintiffs bought out the entire concern, giving bonds to pay all the liabilities of both the former firms. One William S. Flint of Hardwick, on the 16th of September, 1833 sold and conveyed to D. W. Page a farm in Hardwick, called the Kibby farm at the price of $1050,00. By some agreement between the defendants, George W. Page agreed to pay the price of the farm in goods delivered at his store in Barre, at New-York prices. Flint desired the security of the firm for the price of his farm, which they, Crosby, Page & Co. agreed to give whenever George W. Page should pay the price, in goods, into the concern, which he agreed to do soon. The deed of the farm and the notes of the firm for the price were made and put into a trunk, there to remain until the goods should be furnished by George W. Page, which was done in the course of the fall of 1833, and Flint then, by the consent of D. W. Page and Crosby, took the notes of the firm, and D. W. Page took the deed.

The plaintiffs, themselves, were not particularly conversant with the detail, of the business, although often at Lowell and always having access to the books, but they trusted chiefly to their partners and clerks, although it appeared the foregoing arrangements were within their knowledge, except the actual delivery of the goods by George W. Page, and the delivering of the notes and deed after they were put into the

Washington,
March,
1840.

Sheple &
Warner
v.
Page, et al.

trunk, in regard to which their was no direct evidence. The goods were delivered at three different times, and the bill of each parcel entered upon the books of the firm, and the whole receipted by George W. Page. In the month of June 1835, George W. Page presented the notes described in the plaintiff's declaration to Sheple, one of the plaintiffs, at Waterbury, and requested immediate payment or security. The notes corresponded in amount and date with the several deliveries of goods by George W. Page, as entered upon the books of the firm, and were signed by D. W. Page by the name of Crosby, Page & Co. and George W. Page claimed that they were given for the goods and at the time or about the time of the delivery. Sheple insisted that the goods were delivered to them on account of the notes, which they gave to Flint, and that Flint was not entitled to take the notes of the firm until these goods were delivered, and so was the fact. Page replied to him that such was the original contract, but a different arrangement was subsequently made and the firm were justly made liable to him for the goods by the notes, and that the plaintiffs undoubtedly had a claim upon Flint in some way, either on his contract to see the goods delivered, or by way of defence to the notes. Page had his attorney by him and writs ready made and threatened to sue immediately, unless payment was made or security given to the acceptance of the attorney, O. H. Smith, who held demands against George W. Page. Smith offered to accept a new note with a confession of judgment, which Sheple finally consented to give and did give for the amount paid upon the judgment by plaintiffs.

There was testimony in the case tending to prove that these notes were fabricated by the defendants after the dissolution of the firm, of Crosby, Page & Co. and D. W. Page & Co. and, among other things, that, at the time plaintiffs purchased the entire concern and D. W. Page went out of it, they required him to present them an inventory of all the property belonging to the firm, and also of all their liabilities. For that purpose Daniel W. Page employed George W. Page to assist him and the inventory was drawn up in the hand writing of George W. and was presented to the plaintiffs, by both defendants, as containing a perfect inventory of all the liabilities of the firm, which inventory did not contain the

notes in question. George W. Page being then enquired of by plaintiffs, if he held any other claims or knew of any against either of the firms, answered positively that he did not. Testimony was also given tending to prove that the notes were in existence before the dissolution of either of said firms. The court charged the jury, in substance, that if the notes were given at the time they bore date and in the manner represented to Sheple by George W. Page, although Page knew that they ought never to have been given and that what he had stated to Sheple about some other arrangement having been made and that plaintiffs undoubtedly had a claim upon Flint, was absolutely false, still it was the plaintiffs' folly to pay the notes, and they could not on that account recover the money back again ; but that if, after the dissolution of both firms and D. W. Page had gone out of the concern, the defendants fabricated these notes, with a view to make plaintiffs chargeable upon them and then George W. in furtherance of the original design induced the plaintiffs to pay the same, in the manner stated, without disclosing the fact of the notes having been set on foot subsequently to the dissolution of the partnership, it was such a fraud as would entitle the plaintiffs to recover the money paid and interest.

The jury returned a verdict for the plaintiffs, and the defendant, George W. Page, excepted to the decision and charge of the court.

W. Upham and L. B. Peck, for defendants.

The charge of the court below was erroneous. 1st: Because it made the time, when the three notes signed D. W. Page & Co., were given, material.; although the plaintiff, Sheple, knew when he took them up and gave the note and confession of judgment, that they were given for goods, which had been otherwise paid for, and that they were not due and could be successfully defended.

2. Because the jury were directed to return their verdict for the plaintiffs, if they found that the notes were, in point of fact, executed and delivered after the dissolution of the firm of D. W. Page & Co., in October, 1834, and that George W. Page did not disclose that fact to Sheple when he took them up and gave the new note and confession of judgment in June, 1835.

The case shows that Sheple knew, in June, 1835, when he confessed judgment for the amount of the notes, that they were invalid, and could not be collected. He knew that they were given for the goods which had been paid for by way of the " Flint farm ;" and that they were not obligatory upon him. There was also evidence in the case tending to show that Sheple was not deceived by any concealment on the part of G. W. Page, at the time when the notes were given. It appears from the case, that G. W. Page was present, in October, 1834, when the plaintiffs bought out D. W. Page, and that they, upon that occasion, enquired of G. W. Page, if he had any notes or demands against D. W. Page & Co., and he declared that he had none. If the notes in question were executed and delivered after the plaintiffs bought out D. W. Page, in October, 1834, Sheple, when he took them up and gave the new note and confession in June, 1835, knew it : he was not deceived by the silence of G. W. Page upon the subject. The instruction given to the jury upon this point, in the court below, therefore, was erroneous. If Sheple knew the notes were given after the dissolution of the firm of D. W. Page & Co., it was perfectly immaterial whether Page disclosed the fact or not. But it was immaterial, we apprehend, whether the notes were given before or after the dissolution of the firm of D. W. Page & Co., because the time when they were given could not affect their validity. They were equally invalid, whether given before or after the dissolution.

We placed our defence, in the court below, upon the following grounds, and it should have been sustained :

1. That the three notes in question were voluntarily taken up by Sheple and a new note given for their amount, to a third person, with a full knowledge that they ought never to have been given, and that they were invalid, and could not be collected if he chose to defend against them. *Brown* v. *McKinally,* 1 Esp. Cas. 279. *Knibbs* v. *Hall,* ib. 84. *Cartwright* v. *Rowley,* 2 Esp. Cases, 723. *Marriot* v. *Hampton,* id. 547. 7 Term R. 269. *Bulkley* v. *Stewart,* 1 Day's Cases, 130. *Holmes et al.* v. *Avery,* 12 Mass. R. 134, 136.

WASHINGTON,
*March,*
1840.

Sheple &
Warner
*v.*
Page, *et al*

2. That the plaintiffs, by their own negligence, are barred of all remedy in this case, both at law and in equity. *Bateman* v. *Willoe*, 1 Sch. & Lef. 204. *Le Gaw* v. *Goodneau et al.* 1 Johns. Cases, 492. *Simpson* v. *Hart*, 1 Johns. Ch. R. 91. *Lansing* v. *Eddy*, id. 49. *Smith et al.* v. *Lancy*, id. 322. *Barker* v. *Elkins et al.* id. 465. *Lee* v. *Bates*, 2 Ch. Cases, 95. *Curtis* v. *Smallridge*, 1 Ch. Cases, 43. *Williams* v. *Lee*, 3 Atk. 223. *Dodge et al.* v. *Strong*, 2 Johns. Ch. R. 228. 2 Swift's Dig. 94. 1 Pick. 435.

3. That the money on the three notes to G. W. Page, was collected by due process of law, and for that reason it cannot be recovered back in this or any other form of action. *Phillips* v. *Hunter*, 2 H. Bl. 415. *Thatcher et al.* v. *Gammon*, 12 Mass. 268. *Homer* v. *Fish et al.* 1 Pick. 435. *Smith* v. *Lewis*, 3 Johns. R. 157. *Hopkins* v. *Lee*, 6 Wheat. 109. *Harvey* v. *Richards*, 2 Gall. 216. *Hughes* v. *Blake*, 1 Mason 515. *Jones* v. ———, 8 Johns. 453. 7 id. 20. *Jackson* v. *Hoffman*, 9 Cowen, 271. *Etheridge* v. *Osborn*, 12 Wend. 399. *Wright* v. *Butler*, 6 Wend. 284. *Gardner* v. *Buckley*, 3 Cowen 120. *Jewett* v. *Wood*, 3 Wend. 27. *Wood* v. *Jackson*, 3 Wend. 9. *Bradshaw* v. *Heath*, 13 Wend. 419. *Adams* v. *Barnes*, 17 Mass. 365. *Betts* v. *Starr*, 5 Conn. 550. *Dennison* v. *Hyde*, 6 Conn. 508. *Gelston* v. *Shenck*, 13 Johnson, 141. *Burt* v. *Streetleigh*, 4 Cowen 559. 1 Starkie's Ev. 191 to 205. 17 Mass. 394. *Barney* v. *Cady & Goff*, 1 D. Chipman 304. *Tilton* v. *Gordon*, 1 N. H. R. 33.

4. The declaration is insufficient, and the motion in arrest of judgment in the court below, should have been sustained. See authorities above cited.

*Maeck & Smalley*, for plaintiffs.

Both bills of exceptions clearly show that plaintiffs were ignorant of the facts by which they could defend themselves, and that George W. Page induced the payment by false and fraudulent representations.

1. The law is well settled, that in order to deprive a party of his remedy on the ground of voluntary payment, it must be made with a full knowledge that such payment ought not to have been made. The true criterion is, whether in point of fact, there was a mistake in the payment. *Waite* v. *Leg-*

WASHINGTON,
March,
1840.

Sheple &
Warner
v.
Page, et al.

get, 8 Conn. 195. *Mowatt* v. *Wright*, 1 Wend. 355. *Garland* v. *Salem Bank*, 9 Mass. 408. *Union Bank* v. *U. S. Bank*, 3 Mass. 74. *Farmer* v. *Arundell*, 2 Black R. 825. *Chatfield* v. *Paxton*, Note to 2 East. 471. *Brisbane* v. *Davis*, 1 C. L. R. 46. *Hodgson* v. *Williams*, 6 Esp. 29.

A party cannot insist that a payment is voluntary, when it has been induced by any circumvention, fraud or false representation on his part. *Holmes* v. *Avery*, 12 Mass. 124. ———— v. *Duncan*, 13 C. L. R. 293. *Lowry* v. *Bourdieu*, Douglas, 471. *Herbert* v. *Champion*, 4 Camp. 135.

The party paying, has the right to confide in the assertions of the party claiming and receiving. 3 Mass. 74. *Boyce* v. *Grundy*, 2 Peters, 218. *Linsey* v. *Selby*, 2 Lord Raymond, 1118. *Sherwood* y. *Salmon*, 5 Day 445. *Cochran* v. *Cummins*, 4 Dall. 250. *Dobell* v. *Stevens*, 10 C. L. R. 201. *Bowring* v. *Stevens*, 12 C. L. R. 159.

So where, as in this case, payment is made under coercion, or the influence of a threat, it is not voluntary. *Hodgson* v. *Williams*, 6 Esp. 29. *Bond* v. *Hayes*, 12 Mass. 34. *Brisbane* v. *Dacres*, 1 C. L. R. 46. *Astley* v. *Reynolds*, 2 Strange, 915. *Mowatt* v. *Wright*, 1 Wend. 361.

The note paid by the plaintiffs was executed directly to Mr. Smith, for the benefit of George W. Page's creditors, a confession was given at the time; and even if it had not been reduced to a judgment, the plaintiffs, as against Page's creditors, could make no defence. *Vattell* v. *Parker*, 6 Wend. 615. Bailey on Bills, 528, 547, 549, 550, 571. *Russell* v. *Bull*, 2 Johns. 50. 20 Johns. 144. ———— v. *Baldwin*, 12 Pick. 545.

Again, the fraud was complete, and the right of action accrued upon Sheple's first taking up the three notes. The giving of the note was a payment, and was so understood by the parties at the time. *Clark* v. *Penney*, 2 Cowen. *Reed* v. *Barber*, 3 Cowen, 272. *Tuttle* v. *Mayo*, 7 Johns. 132. *Beardsley* v. *Root*, 11 Johns. 464. *Maneely et al.* v. *McGee*, 6 Mass. 143. *Curtis* v. *Ingham*, 2 Vt. R. 287. *Lapham* v. *Barrett*, 2 Vt. R. 213. *Whitcomb* v. *Williams et al.*, 4 Pick. 228.

The defendants cannot complain of the charge as given, though the plaintiffs might. We view the charge as errone-

Washington,
*March,*
.1840.
———
Sheple &
Warner
*v.*
Page, *et al.*

ous in restricting the jury to find, besides the purpose for which the notes were executed, that they were executed after the dissolution of the firm. But this direction was injurious to plaintiffs, and beneficial to defendants. *They*, therefore, cannot complain.

If, however, the court should be of opinion that sufficient appears on the exceptions that the payment was made under no mistake of facts; then we say it was made under ignorance of the law, and being so, was *not* voluntary. *Bilbie* v. *Lumley*, 2 East. 469, which is the only English case where the maxim, *ignorantia juris non excusat*, was ever applied to a civil case. *Lowry* v. *Bourdieu*, Doug. 471. is the doctrine of a single judge, Buller, and the case did not turn upon the application of the maxim. In *Brisbane* v. *Dacres*, 5 Taunt. 133, the court held that the maxim did not apply to those cases where the retaining of the money would be against the conscience of the party to whom it was paid. In *Lansdown* v. *Lansdown*, Mosely, 264, *Bingham* v. *Bingham*, 1 Ves. R. 126, *Champlin* v. *Layton*, 1 Edwards' C. R. 466, and same case, in page 180, *Farmer* v. *Arundell*, 2 Black. R. 825, *Birge* v. *Dickason*, 1 Term. R. 285, *Brisbane* v. *Dacres*, 1 C. L. R., 49, the same doctrine is held. The motion in arrest cannot prevail.

Enough is stated in the declaration as the ground of an action against the defendants. And the court will presume any thing proved at the trial, which was necessary to be proved to sustain the declaration, unless the contrary expressly appears. *Parkey* v. *Harrison*, Raymond, 232. *Bull* v. *Steward*, 1 Wils. 255. *Weston* v. *Mason*, Burr. 1728.

Fraud and damage, resulting from the defendant's acts are the only essential ingredients, and where these concur, the cause of action is complete. *Upton* v. *Vail*, 6 Johns. 181. 13 do. 224, 329, 395. *Allen* v. *Addington*, 7 Wend. 9. *Haycroft* v. *Creasy*, 2 East, 92. *Parley* v. *Freeman*, 3 Term R. 51.

The opinion of the court was delivered by

Bennett, J.—This case comes before the court upon two bills of exceptions, one allowed to each of the defendants; and upon a motion in arrest for the insufficiency of the declaration. The declaration sets forth an action on the case in the

nature of a conspiracy ; and, in the argument, no objections to the declaration have been pointed out ; and we do not discover any that can avail the party. The declaration states, in substance, that after D. W. Page had ceased to have any interest in either of the co-partnerships, and the plaintiffs had become obligated to save him harmless from, and pay all the debts of either of the firms, he and G. W. Page fraudulently combined to cheat the plaintiffs by means of the notes executed by D. W. Page to his brother, in the name of the firm ; that the notes were made and delivered to G. W. Page to effect this object, and to enable G. W. Page to prosecute the same and obtain payment thereof from the plaintiffs ; and that he afterwards did present them and by his false and fraudulent representations procured their payment. Though it is well settled that the damage to the plaintiffs is the *gist* of the action—and not the conspiracy ; yet where two or more combine together for the same illegal purposes, each is to be considered as the agent of the others, and the act of one, in pursuance of the object, is, in legal contemplation the act of all. The declaration avers the fraudulent combination between the defendants to cheat the plaintiffs, by the means set forth, and that the notes were executed and delivered to G. W. Page to enable him to prosecute them for payment ; by which means the fraud was to be perfected. The acts, then, of G. W. Page in obtaining payment, were directly in furtherance of the original design, necessarily from their very nature and character. In such case, it is sufficient, if it be averred in the declaration to have been done individually. Such act, in judgment of law, is the act of all. *Jones* v. *Baker,* 7 Cow. R. 445. *Livermore* v. *Herschell,* 3 Pick. R. 33. *Tappan, et al.* v. *Powers et al.* 2 Hall's R. 298. This declaration, then, must be held sufficient against both defendants.

The conspiracy, charged in the declaration, is important, only as it serves to give character to the individual acts of those, who were parties to it. The *gist* of this action is the damage sustained by the plaintiffs, by reason of the fraud of the defendants. The question then presents itself,—is there any good ground of exception to the instructions, given by the court below to the jury, as to either of these defen-

WASHINGTON,
March,
1840.

Sheple &
Warner
v.
Page, et al.

Sheple &
Warner
v.
Page, et al.

dants ?    We will first examine the bill of exceptions, allow-
ed to G. W. Page.

The plaintiffs, to sustain this action, must prove a fraud to
have been committed by the defendants, and that a damage
has, by means thereof, resulted to them.   Whether the de-
ceitful and fraudulent means have been used, as alleged,
and whether the plaintiffs have been, in fact, deceived by
them to their injury, were questions for the jury.   Though re-
presentations, made by the defendants, may have been false,
and this known to them at the time, still, if the plaintiffs
knew them to be false, they cannot have been deceived,
and they have no ground for this action.   The plaintiffs must
have acted relying upon the truth of the representations ;
and they must have been such, as were likely to impose up-
on a man of ordinary prudence and caution, and to throw
him off his guard on a point where he might have reason to
rely upon the representation of the defendants.   Without
this, there can be no such fraud, as is actionable in our
courts of justice.   If the instructions given to the jury
would have warranted them in giving a verdict for the plain-
tiffs, without finding that they had been deceived and de-
frauded by the representations of the defendants, most clearly
there is error in the charge.   Before the jury can find for the
plaintiffs, against G. W. Page, they must, according to their in-
structions, have found ;  "that the defendants *fabricated* the
notes after the dissolution of the partnerships *with a view* to
charge the plaintiffs with the payment of the same, and that,
after this, George W. Page, *in furtherance of this object, in-
duced* the plaintiffs to pay the same, *in the manner stated,*
without disclosing the fact that they had been set on foot
subsequent to the dissolution of the two partnerships."   The
case finds that the notes bore date prior to the dissolution
of the first partnership, and, if in fact executed after its dis-
solution, they must have been antedated ; and with the
basest purposes, if done with the intention of making
the plaintiffs chargeable, under the circumstances detailed
in this bill of exceptions, with the payment of them.   They
must also have found that the defendant, G. W. Page, *in fur-
therance of this object,* that is, to charge the plaintiffs with
the payment of the notes, *induced* &c., in " *the manner sta-
ted*" in the case.   It is important to see what *this manner*

was. This defendant claimed of the plaintiffs, that the notes were given for the goods which he had delivered to the firm, and about the times of such delivery, and that though at first it was agreed, that Flint should not take the notes of the firm given for the farm deeded by Flint to D. W. Page, until George W. Page should have delivered the goods to the firm; yet that, subsequently, a different arrangement was made, and the firm was justly made liable to him for the goods by means of the notes. The enquiry then is, were these inducements false and known at the time to be false? And were the plaintiffs thereby deceived? The case finds that the last partnership was not dissolved until October, 1834, and the jury, under the charge of the court, must have found that, in point of fact, the notes were made after that time, and that they bore a false date. The case also finds that the goods were delivered by George W. Page to the first firm, to pay them for the notes which they had given to Flint for the land, and that the bills for the goods were then receipted by George W. Page in full. When facts are stated in a case we are to consider them either as admitted on trial, or else so established as not to be the subject of controversy. It is impossible then that the goods should have formed a just consideration for the notes in question. There is not in the case the least evidence tending to prove any new arrangement subsequently made in regard to the goods. The inducements, then, held out to the plaintiffs, to settle the notes, were *false*, and this must have been, from the nature of the case, known to the defendants. They were the very actors in the scene. Does the case show that the jury must have found that the plaintiffs have been deceived? The notes in question, from their date, purport to have been executed before the dissolution of the first partnership; and G. W. Page, when he presented the notes for payment to the plaintiffs, insisted that they were given about the time of their dates and for the several bills of goods he had delivered the firm, and that the goods had in no other way been paid for, and that the notes were his just due.

This was in June, 1835. The plaintiffs had a right to rely upon these representations; and the court charged the jury that they must find, that the plaintiffs *were induced, in*

WASHINGTON,
March,
1840.

Sheple &
Warner
v.
Page, et al.

*the manner stated*—that is, by *these representations*—to settle and pay the notes. The fact, then, has been found by the jury that these representations *induced* the payment of the notes. This could not have been, unless they had been relied upon and confided in by the plaintiffs. It is said in argument that the plaintiffs knew that the representations of G. W. Page were false, and that they had no right to rely upon them, and could not be deceived, and consequently that this action cannot be maintained.

If the plaintiffs knew the representations to be false, they could not have been induced to act, relying upon them, and would have no ground for this action. It is true, the case finds that G. W. Page, in 1834, represented to the plaintiffs that he held no such notes; yet, in 1835, he presents to them the notes in question, dated in 1833, and, among other things, stated that they were executed about the time they bore date.

There were contradictory statements made by G. W. Page, and the plaintiffs must have been led to the conclusion that there was some mistake in this business. And which representation shall they rely upon? They had no knowledge on the subject, but had simply the declarations of G. W. Page. The jury have found that the plaintiffs have been induced to take up the notes, by the last representations, and this necessarily implies that they must have been relied upon. If the jury had not found this, it would, under the charge of the court, have been their duty to return a verdict for the defendants.

It is also insisted that this action cannot be maintained, in-as-much as the payment of the notes in question was what the law terms a voluntary payment. A sufficient answer to this objection is, that this action is to be sustained only upon the ground that the plaintiffs were induced to take up the notes in question by the false and deceitful representations of the defendants; and the jury have found the fraud. If, then, the payment was induced through the fraudulent practices of the defendants, most clearly it could not have been, in the eye of the law, voluntary.

The facts detailed in the bill of exceptions, allowed to D. W. Page, are essentially the same as in the other; and the court charged the jury, that if they found the notes

were executed by D. W. Page, in the name of Crosby, Page & Co., to G. W. Page, subsequently to D. W. Page's selling out his interest in the concern to the plaintiffs, and antedated, as stated in the case, to enable G. W. Page to defraud the plaintiffs, and the plaintiffs assumed the payment of the notes by giving a new note and a confession of judgment on it, *believing* that the first notes had been executed at the time they bore date, and in the course of D. W. Page's ordinary business connection with the concern, the plaintiffs were entitled to recover, though they knew they were given for the goods.

WASHINGTON, *March,* 1840.

Sheple & Warner *v.* Page, *et al.*

If D. W. Page, after he had ceased to have any power to bind the firm, and after the plaintiffs had agreed to save him harmless from any debts against them, conspired with G. W. Page, and executed notes against the firm to him, and *antedated* them before the dissolution, to enable G. W. Page to defraud the plaintiffs, and the plaintiffs, believing them to be legal claims against the firm of Crosby, Page & Co., paid them to G. W. Page, it is indeed a vile fraud in both of them. The fact of making the notes at a time when D. W. Page had no right to do it, and affixing to them a false date, so that they might appear as legal claims, and presenting them as such for payment, without disclosing the facts attending their execution, would be such a suppression of truth as would constitute gross fraud. And the presentation of the notes, with such false date, is, in and of itself, a false representation in that which was material to the validity of the notes. And as the jury must have found that the defendants conspired in such fabrication of the notes, their *scienter* must have been proved as being necessarily involved in the facts which the jury were instructed they must find, to entitle the plaintiffs to their verdict. The defendants' motion in arrest must be overruled, and the judgment of the county court affirmed.