Todd v. Geno et. al., No. 75-1-13 Rdcv (Toor, J., Sept. 27, 2013).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
RUTLAND UNIT
CIVIL DIVISION

| | |
|---|---|
| ANDREW N. TODD<br>  Plaintiff<br><br> v.<br><br>KEVIN E. GENO, et al.,<br>  Defendants | Docket No. 75-1-13 Rncv |

RULING ON PENDING MOTIONS.

Plaintiff Todd sues his former employer, the City of Rutland, and various other City employees in connection with his past employment as a Rutland police officer. His initial complaint alleges constructive termination, illegal retaliation for making complaints against his superiors, denials of equal protection and due process, conspiracy, violation of the Vermont Fair Employment Practices Act, and intentional infliction of emotional distress. In response to motions to dismiss, Todd has moved to amend the complaint to delete certain claims and add others. The proposed amended complaint asserts only three causes of action: "Violation of Vermont's Hate-Motivated Crime Statute," violation of the Vermont Fair Employment Practices Act, and "Conspiracy/Concerted Action." It also proposes to add two new defendants.

The undersigned was recently appointed to handle the case after all the judges sitting in Rutland County recused themselves, presumably due to their experience dealing with some or all of the parties on a regular basis in the court system. Defendants Tremblay and the City have filed motions to dismiss, and defendants the City, Geno, Tucker, Jensen and Baker have filed oppositions to the amendment of the complaint. The court will address each motion in turn.

## I.   Motion to Amend the Complaint

Because this case is at an early stage of the proceedings, and because no objections to the motion to amend were filed within the time allowed by the rules, the court will grant the motion to amend the complaint. However, the court will address below the substantive issues raised in the objections to amendment, and treat them as requests for dismissal of the amended claims.[1]

## II.   The City's Motion to Dismiss Based Upon 24 V.S.A. §§ 901(a) and 901a

The first motion filed by the City actually seeks dismissal of the claims not against the City but against Geno, Tucker, Baker and Jensen on the ground that those claims must proceed only against the City. Specifically, the City argues that because the claims against these defendants all relate to actions within the scope of their employment, the City is the only proper defendant. 24 V.S.A. §§ 901(a) and 901a.

Todd responds by pointing to the statutory exception for acts that are willful, intentional, or outside the scope of employment, and argues that until those issues are resolved the claims against the individual defendants are proper. 24 V.S.A. § 901a(e). A straightforward reading of the statute supports Todd's argument. The City cites legislative history for the proposition that once the municipality provides a defense for the individuals, they must be removed from the case. However, the statute does not support that reading for cases such as this, in which it is alleged that the individuals acted outside the scope of their employment. In that situation, the statute refers to a court dismissing such parties *after* making a determination that the actions

---

[1] Todd has attached numerous documents to his reply memorandum in support of the motion to amend (Although he calls the memo something else, it is in fact a reply. *See* V.R.C. P. 78(b)(1)(setting forth order of filings as motions, responses, and replies)). He also adds facts in his memorandum that are not in the complaint. The court will not consider any of these new alleged facts or documents, as none are contained in the proposed Amended Complaint.

were not "willful, intentional, or outside the scope of the employee's authority."  Id. § 901a(d)(2). The amended complaint survives the motion.[2]

The City also urges that the VFEPA claim must be dismissed against the individuals because they are not the "employer." However logical that may seem on its face, our Supreme Court has held that individual employees are subject to liability under the statute. Payne v. U.S. Airways, Inc., 2009 VT 90, ¶ 21, 186 Vt. 458 ("[[T]he VFEPA allows for suits against employees as individuals.").

### III.     The Motion to Dismiss the City and to Strike

The City raises a number of issues in its motion to be dismissed from the case. Each will be discussed in turn.

#### A.  Conclusory Allegations

The City first raises a general argument seeking to strike or dismiss what it describes as conclusory allegations in the complaint. However, the amended complaint provides greater specificity to the claims that remain.  Many remain extremely conclusory, it is true. However, despite dissents urging stricter standards – *see*, Bock v. Gold, 2008 VT 81, ¶ 15, 184 Vt. 575 (Skoglund, J. dissenting)("In reviewing the sufficiency of a complaint, this Court  .   .   .  need not accept conclusory allegations or legal conclusions masquerading as factual conclusions.") and  Colby v. Umbrella, Inc., 2008 VT 20, ¶ 20, 184 Vt.1 (Burgess, J., dissenting)(urging that plaintiffs be required to plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action")(citation omitted)  – Vermont has a "low threshold for withstanding a 12(b)(6) motion to dismiss." Colby, 2008 VT 20, ¶ 8. Thus,  our Supreme Court has so far not adhered to the stricter pleading standards applicable in some other jurisdictions

---

[2] If, on summary judgment, it is shown that the acts were within the scope of employment and not "willful" or "intentional" under the statute, the individual defendants could then properly be removed as parties.

(such as in the federal cases cited by the City). Here, a "complaint need not give a specific and detailed statement of the facts constituting the cause of action." Murray v. City of Burlington, 2012 VT 11,¶ 13, 191 Vt. 597 (citation omitted).

The Vermont Supreme Court cases cited by the City do not say otherwise. One relates to what must be proffered in response to a summary judgment motion, not a motion to dismiss. White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999). Nor does the case the City cites for the proposition that allegations of conspiracy require a heightened pleading standard say that. Instead, it says that "[n]o court will accept conclusory allegations of a conspiracy, without more, *as sufficient to establish personal jurisdiction*" over an out-of-state defendant. Schwartz v. Frankenhoff, 169 Vt. 287, 295 (1999).[3] Thus, with the exception of matters discussed below, the court finds the amended complaint to be sufficient.

## B.  Count I: Hate-Motivated Crime

The City argues that the "hate crime" cause of action fails against it. Although conceding that the criminal statute expressly creates a private right of action, 13 V.S.A. § 1457, the City argues that a specific intent crime such as this cannot be imputed to a municipality. This is clearly a specific intent crime, requiring that a defendant's conduct be "maliciously motivated by" a discriminatory purpose. Id. § 1455.

Employee actions can, under certain circumstances, be imputed to their corporate employers. *See, e.g.*, Application of Criminal Law to Corporations, 10 Fletcher Cyc. Corp. § 4942 (West, Westlaw through Sept. 2013); Genty v. Resolution Trust Corp., 937 F. 2d 899, 909 (3rd Cir. 1991)("Courts long have held ordinary corporations civilly and criminally liable for the

---

[3] The court trusts this was a regrettable mistake by counsel in reading the case, rather than an intentional misrepresentation. This court expects more careful reading of cases from counsel in the future. *See* V.R.C.P. 11(b).

4

malicious torts or crimes of their high officers, particularly when the corporation benefits from the officers' offensive conduct."). However, *municipal* corporations are a special animal.

The bulk of authority holds that a municipality cannot be held liable for specific intent crimes. *See*, *e.g.*, Lancaster Community Hosp. v. Antelope Valley Hosp. Dist., 940 F. 2d 397, 404 (9th Cir. 1991)("government entities are incapable of forming a malicious intent."); Mathis v. Ohio Dept. of Job and Family Services, No. 2:11–cv–395, 2011 WL 5075824,*2 (S.D. Ohio, Oct. 25, 2011)("a county cannot form the specific intent necessary to establish a RICO claim"); Interstate Flagging, Inc. v. Town of Darien, 283 F. Supp. 2d 641, 645-46 (D. Conn. 2003)(malicious intent of police officers cannot be imputed to town)(citing cases); Massey v. City of Oklahoma City, 643 F. Supp. 81, 85 (W.D. Okl. 1996)(finding that city could not be liable for RICO violations by Police Chief and Assistant Police Chief because "the City itself is incapable of forming the mens rea or criminal intent necessary to perform an act of racketeering"); Pine Ridge Recycling, Inc. v. Butts County, Ga., 855 F. Supp. 1264, 1273 (M.D. Ga. 1994)("Most courts which have considered the question have held that a municipal corporation can not form the requisite criminal intent" required under RICO); In re CitiSource, Inc. Securities Litigation, 694 F. Supp. 1069, 1079 (S.D.N.Y. 1988)("criminal intent of its agents will not be imputed to a municipal corporation, as it would be to an ordinary corporation."); State v. Metropolitan Park Dist.,171 P. 254 (Wash. 1918) ("a municipal corporation . . . is incapable of committing any offense of a purely criminal nature which has in it the element of evil intent, malice, or willful violation of the law's command.").

A well known treatise on the topic of municipal corporations agrees: "[T]he criminal intent of an agent of a municipal corporation can never be imputed to the municipal corporation itself . . . Nor can they be indicted for offenses which derive their criminality from evil intention." McQuillin, The Law of Municipal Corporations, 17 McQuillin Mun. Corp.§ 49.91

5

(3d Ed.)(West, Westlaw through 2013); *but see* Stuart P. Green, Criminal Prosecution of Local Governments, 72 N.C. L. Rev. 1197(1994)(discussing historical prohibition but arguing it is no longer logical).

Vermont law does not seem to directly address the question. The case cited by the City relates not to the question of mens rea, but to whether a municipality can be criminally charged for failing to comply with an express municipal duty. State v. Town of Burlington, 36 Vt. 521, 523-24 (1864).[4] Nor has Todd cited any Vermont case supporting his position. The court concludes that even if it is proved that any individual defendant's conduct in this case was race-motivated, such intent cannot be imputed to the City.

The City also argues that there is no actual crime alleged in the amended complaint. The "hate crime" statute is not a freestanding one. It merely makes it a separate crime, and creates a civil cause of action, when another crime is committed with a specific type of intent. Thus, an underlying crime must also be pled.

What Todd alleges is that various defendants violated 13 V.S.A. §§ 1021, 1023, 1061, 1063, 3006, 3007, and 3015, 21 V.S.A. § 495 and 26 V.S.A. § 3151. Am. Comp. ¶¶ 53-64. Two of these provisions, 13 V.S.A. §§ 1021 and 1061, are merely definitional sections and state no crime. The Title 21 provision is part of the Vermont Fair Employment Practices Act but is not a criminal statute. *See*, 21 V.S.A. § 495b (State may seek civil penalty or injunctive relief). The Title 26 provision is merely a definitional provision and states no crime.

---

[4] The description of the charge is a wonderful reminder of the more flowery language of the past: "The indictment alleges that the defendant unlawfully and knowingly did keep and permit to be and remain in, upon and near to a certain street in said town of Burlington aforesaid, commonly called King street, a certain amount of putrid, filthy, noxious and stagnant water, by and from which divers hurtful, pernicious and unwholesome smells on the day and during the time aforesaid did and doth rise, and the air then was, and yet is thereby greatly corrupted and infected to the great damage and common nuisance not only of all the citizens of said town of Burlington aforesaid, there resident and dwelling, but also of all the citizens of said county of Chittenden aforesaid, passing and re-passing, &c." Id. at 522.
.

There remain several allegations of criminal acts. Section 1023 is the crime of simple assault; 1063 is aggravated stalking; 3006 is neglect of duty by town officers; 3007 is neglect of duty by members of boards and commissions, and 3015 is obstruction of justice.

Simple assault involves purposely, knowingly, or recklessly causing bodily injury to another person, negligently causing bodily injury with a deadly weapon, or attempting to place someone in fear of "imminent serious bodily injury." 13 V.S.A. § 1023. Bodily injury essentially means any pain. Id. § 1021(1). Serious bodily injury includes a substantial risk of death. Id. § 1021(2)(A). The amended complaint alleges (as to the present defendants) only that someone, unidentified, "assaulted" Todd. Am. Comp. ¶¶ 68, 84. It does not say who, or how, or any other details. Absent such specific allegations, the pleading fails to state a claim for assault.

Aggravated stalking requires violation of a court order, a prior conviction for stalking or for a violent crime against the same person, a victim under sixteen years old, or possession of a deadly weapon during the stalking. 13 V.S.A. § 1063(a). It also requires (1) two or more incidents of following, lying in wait, or threatening the person, (2) no legitimate purpose, and (3) acts that would make a reasonable person fear death, sexual assault, unlawful restraint, or bodily injury. 13 V.S.A. § 1061. The only allegation of stalking relates to Geno. The amended complaint alleges that Geno "stalked" Todd, and that he was armed at the time, but does not set forth facts to establish that whatever the conduct was met the narrow definition of stalking. Am. Comp. ¶¶ 29, 30, 55. Given the very specific requirements of the statute, the court finds that this is insufficient to plead stalking.

The provisions of 13 V.S.A. § 3006 impose criminal penalties upon government officers if they are convicted of "willfully neglect[ing] to perform the duties imposed upon [them] by law, either express or implied[.]" Section 3007 similarly imposes criminal penalties for government board or commission members convicted of willful neglect of "a duty, express or

7

implied[.]" The City argues that the amended complaint fails to allege violations of a "duty imposed by law" within the meaning of these statutes, citing various cases for the proposition that such a duty must be one created by statute.

Without deciding that question, the court nonetheless concludes that the pleading fails. The amended complaint conclusorily alleges that various defendants failed to take actions they should have taken, or "failed to fulfill ministerial duties," – e.g., Am. Comp. ¶ ¶ 56-58, 60, 63, 74-75, 77, 83, 90 – but it does not cite any statutory sources for such duties other than the Vermont Fair Employment Practices Act. Specifically, the complaint alleges that Defendants had a duty under 21 V.S.A. § 495 to "forbid or prevent the negligent, tortious, criminal and attempted criminal conduct upon the plaintiff" and failed to do so. Am. Comp. ¶¶ 68 and 93. However, the court finds no language in Section 495 creating an express duty to investigate or enforce.

The only other source for a mandatory duty cited in the complaint is the "rules and regulations of the Rutland City Police Department." Am. Comp. ¶¶ 63, 77. However, even assuming for the moment that such rules and regulations are a sufficient source for the duty to which 13 V.S.A. §§ 3006 and 3007 apply – a proposition for which Todd has offered no authority – no rule or regulation is cited in the amended complaint and thus these allegations fail to state a claim.

Section 3015 is the obstruction of justice statute. Todd alleges that Geno, Tucker, Baker Jensen and Tremblay all violated this statute by committing unspecified other crimes and by "corruptly failing to take appropriate action for the criminal conduct of" each other. Am. Comp. ¶¶ 54-60, 64, 84, 92. However, Todd does not specify what acts were taken by each person "corruptly by threat or force" as required by the statute. 13 V.S.A. § 3015. In addition, the court concludes that the statute applies only to matters relating to cases or investigations conducted by agencies or courts of the State, not municipal matters. It refers expressly to courts or agencies "of

the state of Vermont." Id. "Agency" is expressly defined by reference to 3 V.S.A. § 801(b), which refers to "a *state* board, commission, department, agency, or other entity of *state government*…"(emphasis added). Although the latter portion of Section 3015 -- all of which is contained in one very long sentence --  refers generally to impeding the "due administration of justice" without again mentioning the State, the court sees no basis for reading into that portion of the sentence a broader meaning than in the beginning of the sentence.

For all of the above reasons, the motion to dismiss Count I  against the City, alleging a hate-motivated crime,  is granted.

### C.  Count II: The VFEPA Claim

The City argues that the constructive discharge claim cannot succeed because Todd has not shown he left as a result of a hostile work environment rather than for a "career move," and because no discriminatory acts were directed at him. The amended complaint alleges that language and actions were directed at Todd because of his race. This includes allegations that defendants ridiculed him; that a case was fabricated against him with the aim of firing him; that he was threatened and assaulted, and so on. Am. Comp. ¶ 68. He further alleges that the intolerable working conditions forced him to resign. Id., ¶ 69. Moreover, although the City argues that Todd alleges no adverse employment action, and that dissatisfaction with an internal investigation is not such an adverse action, the creation of a hostile work environment so bad that it forces an employee to resign, if proved, would establish discrimination. *See*, *e.g*., Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004) ("[W]orking conditions so intolerable that a reasonable person would have felt compelled to resign" would establish a "hostile-environment constructive discharge claim."). The pleadings are sufficient to survive the motion to dismiss.

D. Count III: The Conspiracy Claim

The City argues that there is no independent cause of action in Vermont for civil conspiracy, citing a number of out-of-state cases and two Vermont cases from the 1880s. Todd responds that such a tort has been recognized since 1840, citing Sheple & Warner v. Page, 12 Vt. 519 (1840).

In Sheple, the Court declared that "where two or more combine together for the same illegal purposes, each is to be considered as the agent of the others, and the act of one, in pursuance of the object, is, in legal contemplation the act of all"— as long as damages are proved. 12 Vt. at 533. In Boutwell v. Marr, 71 Vt. 1 (1899), the Court distinguished criminal and civil conspiracy claims, noting that "the grounds of recovery in a civil suit are not identical with the elements of the crime." Id. at 6. The Court explained that "a civil action cannot be sustained unless something causing damage to the plaintiff has been done in furtherance of the agreement; and it is claimed to be also requisite that the thing done be something unlawful in itself." Id. This seems to acknowledge the existence of such a civil cause of action, at least back in 1899.

In Davis v. Vile, No. 2002-465, 2003 WL 25746021, *3 (Vt., March Term 2003)(mem.), a three-justice panel noted that "[a]ssuming that there continues to be an independent cause of action for the tort of civil conspiracy," it had not been adequately pled in that case. The panel cited cases from other jurisdictions that it saw as raising a question about such claims, but did not go so far as to say they do not exist in Vermont. Instead, the panel went on to analyze the elements of the claim. *See also*, Saunders v. Morton, No. 5:09-CV-125, 2011 WL 1135132, *9-10 (D. Vt. Feb. 17, 2011)(noting that although Davis raises "some doubt" about whether the tort still exists in Vermont, there is also authority to suggest that it does), *report and recommendation adopted*, 2011 WL 1114416 (D. Vt. Mar 24, 2011); Akerley v. North Country Stone, Inc., 620 F. Supp. 2d 591, 600 (D. Vt. 2009)(citing Boutwell for definition of civil conspiracy).

10

According to one commentator, "[c]ivil conspiracy is a claim recognized under the common law of most states." James L. Buchwalter, Cause of Action for Civil Conspiracy, 54 Causes of Action 2d, § 2 (2012). "When two or more persons agree to perform a wrongful act and carry out the plan, the law imposes civil liability on all of the persons for the resulting damages regardless of whether they actually committed the wrongful act themselves. The effect of this conspiratorial conduct is thus to implicate all who agree to the plan to commit the wrong, as well as those who actually carry it out." Id. It was recognized in Warner and in Boutwell, and has not been expressly rejected by the Vermont Supreme Court since. The amended complaint sets forth the requisite allegations of concerted action to use illegal means to discriminate against Todd, and damage to him as a result. Thus, Tremblay's motion to dismiss the conspiracy claim for failure to state a claim is denied.

The City next argues that a conspiracy claim cannot be asserted against members of a single organization. Even its own cases note, however, that to the extent that the acts in question "arise outside the scope of [the defendant's] employment . . . a conspiracy claim could arguably lie." Vinton v. Adam Aircraft Industries, Inc., 232 F.R.D. 650, 655 (D. Colo. 2005). The amended complaint alleges that the Defendants' actions were illegal, done for their own benefit, and done "in bad faith and outside the scope of their agency." Am. Comp. ¶¶ 80-89. Thus, the court denies the motion to dismiss the conspiracy claims.

E.   The Motion to Strike

The City also asks that certain "scandalous" material in the complaint be stricken. The court agrees that there remain some statements in the amended complaint that have nothing to do with the legal claims being made, and will order Plaintiff to file the amended complaint without such language. Specifically, the phrase "sleeping on the job, lying on timesheets" in paragraph 54 is irrelevant and shall be stricken.

11

### F. Request for More Definite Statement

The City also seeks a more definite statement. It is the court's experience that such documents are rarely helpful, and that interrogatories and depositions are a much more useful way to clarify the details of a plaintiff's allegations. Thus, the request is denied.

### IV.    **Tremblay's Motion to Dismiss**

Tremblay argues that (1) the complaint fails to state a claim against him, and (2) he is entitled to qualified immunity. The amended complaint drops some of the claims that Tremblay correctly pointed out are not freestanding claims, and incorporates them into the claim under the Vermont Fair Employment Parties Act (VFEPA). However, the motion also challenges the "conspiracy" claim, which has been restated but remains. In that claim, Todd asserts that all of the defendants conspired to engage in illegal conduct against him, including assault, stalking, and discrimination based upon his race.[5]

### A. The Conspiracy Claim

Like the City, Tremblay argues that there is no cause of action in Vermont for civil conspiracy. The court has already ruled on this issue above.[6] Thus, the motion to dismiss on this basis is denied.

### B. VFEPA Claim

Tremblay's position with the City is not described in the Amended Complaint, but he is alleged to have been "an agent of the Defendant City of Rutland." Am. Comp. ¶ 8. Whether he

---

[5] The "hate crime" claim asserted in Count I is not addressed by Tremblay's motion. Nonetheless, the court's ruling above applies to all defendants and thus the claims against Tremblay in Count I will be dismissed.

[6] However, the court feels compelled to note that Tremblay cites one case entirely inaccurately. In Stevens v. Poulin Grain, Inc. (In re Stevens), No. 98–11181, 2000 WL 35723732 (D. Vt. Oct. 24, 2000), the court did *not* say there is no cause of action recognized in Vermont for civil conspiracy. Instead, what the court said was as follows: "there is no cause of action for civil conspiracy, or tortious interference with contract or advantageous business relations *alleged in the Amended Complaint.*" Id., *5 (emphasis added). The court went on to explain that "[i]n order to hold the various Defendants liable for a civil conspiracy, a plaintiff must plead and prove that a defendant and at least one other person combined to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." The court's comments in footnote 3 apply equally here.

was an employee or a contractor is not specified. Later in the complaint it is alleged that he was in some way involved in an investigation into other allegations of racist behavior and engaged in a cover-up of Todd's claims. Id. ¶¶ 69-76. It then alleges that all of the defendants engaged in discriminatory acts based upon Todd's race, including ridiculing him, conducting a retaliatory investigation, and creating a hostile work environment. Id. ¶ 68. However muddy the facts, the allegation that Tremblay was an agent of the City and engaged in such actions is sufficient to bring him within the scope of the Vermont Fair Employment Practices Act. While conclusory, it is sufficient under current Vermont law for the reasons explained above. Thus, the motion to dismiss on this basis is denied.

## C. Qualified Immunity

For public policy reasons, government officials are at times protected from suit by doctrines of immunity: either "absolute immunity" or "qualified immunity." Tremblay argues that he is entitled to qualified immunity. That applies when a public official is acting within the scope of his or her employment and authority, acting in good faith,[7] and performing discretionary acts. Sprague v. Nally, 2005 VT 85, ¶ 4, 178 Vt. 222. The idea is to "prevent exposing state employees to the distraction and expense of defending themselves in the courtroom" if they are acting within the range of what a reasonable employee could do. Id., quoting Cook v. Nelson, 167 Vt. 505, 509 (1998).

Although the complaint does not allege that Tremblay is a government employee, it does allege that he acted as an "agent" of the City. This appears sufficient to trigger the doctrine.

---

[7] "Good faith" is used in what can be a confusing manner under this doctrine: it refers not to the official's intent or state of mind, but to what a hypothetical "reasonable person" in the situation could believe to be lawful. For this reason, allegations of intent, malice and the like are not generally relevant. See, e.g., Cook v. Nelson, 167 Vt. 505, 510 (1998) ("defendant in this case is entitled to immunity if he acted in objective good faith despite the jury's finding that he acted with malice to plaintiff"); Rich v. Montpelier Supervisory District, 167 Vt. 415, 423-24 (1998) ("the defense is available even if the plaintiff shows that the official acted with the malicious intention to cause a deprivation of constitutional rights or other injury.")(internal quotation omitted).

LaShay v. Dept. of Social and Rehab. Serv., 160 Vt. 60, 65 (1993)("Qualified immunity . . . protects lower level officials, employees *and agents…*")(emphasis added).

"[I]f the official's conduct does not violate clearly-established [law] of which a reasonable person would have known, the official is protected by qualified immunity from tort liability." Id. "Thus, if the official reasonably believes that his or her actions were lawful, the official receives immunity even if a court later determines that they were not." Id. ¶ 5. "The viability of this defense depends on the objective reasonableness of the official's conduct in relation to settled, clearly-established law." Hoffer v. Ancel, 2004 VT 38, ¶ 12, 176 Vt. 630 (internal quotation omitted).

"'Clearly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Sprague, 2005 VT 85, ¶ 5 (citation omitted). "Of course, when we consider state tort liability, the 'clearly established law' is not limited to federal constitutional and statutory rights, but may include Vermont statutes, regulations and common law." Sabia v. Neville, 165 Vt. 515, 521 (1996) (citation omitted).

In response to the motion to dismiss, Todd alleges in the amended complaint that each defendant's conduct, including Tremblay's, violated clearly established law. Am. Comp. ¶¶ 59 and 87. The complaint cites statutes which Todd alleges Tremblay violated, as well as saying that he violated internal police department rules. As the court has addressed above, none of the allegations establish a violation of any criminal law. The only remaining statutory violation alleged in the amended complaint is a violation of the VFEPA – the creation of a hostile environment. None of the memos expressly address the application of a qualified immunity claim to such a statute. Assuming arguendo that immunity could apply to such a claim, or to the claim that Tremblay violated police department rules, Todd has failed to provide any specific

facts or any case law to demonstrate that Tremblay did anything in violation of "clearly established law." *See, e.g*., Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); Whitley v. Hanna, No. 12-10312, 2013 WL 4029134, * 18 (5th Cir. 2013) (Elrod, C.J., concurring) (there must be "controlling authority" or "a robust consensus of persuasive authority" to show the unlawfulness was clearly established)(citation omitted). Thus, the motion to dismiss all claims against Tremblay based upon qualified immunity is granted.

## V.    Motions of Geno, Tucker, Jensen and Baker

Defendants Geno, Tucker, Jensen and Baker all filed memoranda opposing amendment of the complaint on the ground that the new claims fail to state a claim and are precluded by statute. Their arguments are all similar to those made by the City with regard to (1) the conclusory nature of the allegations, (2) 24 V.S.A. § 901a and 901(a), and (3) the claim that there is no crime alleged in Count I. The court grants their motions to dismiss Count I for failure to state a claim, but otherwise denies their motions, for the reasons set forth above.

### Order

1. Todd's motion to amend the complaint is granted.

2. The City's motions to dismiss are granted as to Count I (hate-motivated crime) but otherwise denied.

3. The City's motion to strike is granted in part and Plaintiff is directed to delete the irrelevant language in paragraph 54.

4. Tremblay's motion to dismiss all claims against him on the basis of qualified immunity is granted.

5. The motions to dismiss of Geno, Tucker, Jensen and Baker are all granted with respect to Count I (hate-motivated crime) but denied in all other respects.

6. Although the two new defendants added to the amended complaint have not yet been served, the court concludes that Count I fails as to those defendants as well. Thus, the court dismisses Count I (hate-motivated crime) in its entirety. Plaintiff is directed to file and serve the amended complaint without that Count.

7. The parties are directed to submit a proposed discovery schedule within two weeks after the new defendants have filed their answers (or, if the parties cannot agree, competing proposals).

Dated at Montpelier this 23rd day of September, 2013.

_____
Helen M. Toor
Superior Court Judge