STEPHEN LEE AND WILLIAM WHITING, AS SURVIVING PARTNERS OF THE FIRM OF LEE & STURGIS, APPELLANTS, *v.* HUGH F. KENDALL, CHARLES B. KENDALL AND JOHN L. TAYLOR, RESPONDENTS.

*Purchase of goods at different times —induced by means of a fraudulent conspiracy— each purchase gives a distinct and separate cause of action — presumption as to the scope of a settlement.*

An action was brought to recover for goods and merchandise sold by the plaintiffs to the defendants at various times, the complaint in which alleged that the defendants had fraudulently conspired together to enable the defendants Kendall to obtain the goods by concealing their actual financial condition. To this complaint an answer was interposed by the defendant Taylor, alleging that a prior action had been brought against him to recover for certain of the goods and merchandise which had been thus purchased of the plaintiffs by said defendants Kendall, and that a judgment had been rendered therein in favor of the plaintiffs, which had been paid, and that said judgment was a settlement and discharge of the claims set forth in the complaint in the present action.

A demurrer was interposed to this answer on the ground that it did not state facts constituting a defense.

*Held*, that, in an action on the case in the nature of a conspiracy, the damage to the plaintiff, and not the conspiracy, is the gist of the action, and proof of the conspiracy is only essential when a verdict is demanded against two or more defendants, and the declarations of one conspirator is offered in evidence against the others.

That the cause of action, for the goods fraudulently obtained on many different occasions, was not one single and entire cause of action, but each purchase was a distinct and several act of fraud for which the plaintiffs were entitled to maintain a separate action.

That the plaintiffs' rights in this matter were not affected by the defendants' general purpose, extending over all the purchases made by them, nor by the fact that such purpose was continuous.

That the settlement made in the former action, brought to recover for only a portion of the purchases thus fraudulently made, upon the basis of about one-third of the sum claimed, would be presumed to be confined in its effect to the particular purchases sued for in that action, leaving the residue to stand unaffected thereby.

APPEAL by plaintiffs, Stephen Lee and William Whiting, from a judgment, entered in the office of the clerk of the county of New York on the 20th day of April, 1889, directing that the defendant John L. Taylor have final judgment in this action, against the plaintiffs in this action, upon the demurrer of the plaintiffs to the second separate and distinct defense set up by the defendant John L. Taylor, with notice of an intention to bring up for review the order of the Special Term, entered in the office of the clerk of the county of New York on the 25th day of March, 1889, overruling the demurrer of the plaintiffs to the defense set up by the defendant John L. Taylor in his answer to the complaint in this action.

The complaint in the action alleged that the plaintiffs and one Jeremiah Sturgis were copartners in business, as dealers in paper stock and supplies, in the city of New York, under the firm name of Lee & Sturgis; that the said Jeremiah Sturgis had died, and that the plaintiffs, as surviving partners, thereupon assumed and continued the management of the business and affairs of the firm; that the defendants Hugh F. Kendall and Charles B. Kendall had formed a copartnership, under the name of Kendall Brothers, for the purpose of carrying on the business of merchants in paper stock and mill supplies; that the debts and liabilities of said firm of Kendall Brothers far exceeded their assets and property, and said firm was from July, 1880, to November 25, 1882, continuously insolvent; that the defendant John L. Taylor had maintained intimate relations with the said firm of Kendall Brothers, and had sold them large quantities of goods upon credit, and had, from time to time, loaned them money and his promissory notes in order to enable the

said firm to maintain its credit. That, for the purpose of securing to the defendant Taylor the payment in full of the indebtedness due him from the said firm of Kendall Brothers, the defendants entered into a conspiracy, and it was agreed between the defendants that the defendants Kendall Brothers should buy goods upon credit from such persons as could be induced to sell them, all of said defendants then well knowing that the said firm could not and did not intend to pay for the same. That the said firm should sell for cash or promissory notes part of the goods thus fraudulently obtained; should procure the said promissory notes to be discounted, and with the proceeds thereof, and with the cash to be realized from such sales, and with the remaining portion of the merchandise to be purchased as aforesaid, should pay in full their indebtedness to the said defendant Taylor. That, in order to carry out such conspiracy and to enable the firm to make such purchases on credit, the defendant Taylor should sustain the credit of the firm until the indebtedness to him had been fully paid, and that when this object had been accomplished the said firm of Kendall Brothers should fail or suspend business or make an assignment of all their remaining assets, which was, in fact, done.

That immediately, or shortly after the making of the said conspiracy, the defendant Taylor, who had theretofore been accustomed to sell large amounts of goods to said firm of Kendall Brothers, ceased altogether to sell them goods; that the defendants Kendall Brothers thereupon bought large quantities of merchandise upon credit with the intent and design not to pay for the same; that, in pursuance of the conspiracy, the said defendants Kendall Brothers, under their firm name, induced the plaintiffs to sell to their firm certain goods, which were set out in the complaint; that such sales were made upon a credit of from two to four months time, and for a part of such goods the said firm gave to the plaintiffs for the price thereof their promissory notes, which were also set forth in the complaint; that the plaintiffs were induced to make the sale upon the fictitious credit given to the said firm by the assistance of the said defendant Taylor, rendered in pursuance of said conspiracy, and in further reliance upon the false and fraudulent representation which the said firm gave to the plaintiffs as to their financial condition. That after such purchases an assignment for the benefit of creditors was made

by the firm of Kendall Brothers, under which all the property and assets of the firm of Kendall Brothers were sold and distributed.

That prior to the beginning of this action the plaintiffs, by means of replevin or other suits, either collected or compromised their claim to the value of certain specific goods sold as aforesaid, which goods were designated in the schedule of sales set forth in the complaint by letters A and B; that after deducting the amount realized in such suits there remained due to the plaintiffs, as against the defendant Taylor, the sum of $27,301.47.

The answer for a separate and distinct defense alleged that an action had been brought by the plaintiffs against the defendant Taylor, in which an answer had been interposed, and a settlement and compromise of the alleged cause of action effected between the plaintiffs and said defendant, whereby the defendant paid to the plaintiffs the sum of $4,000, and the plaintiffs signed and delivered a release and discharge of said cause of action.

The defendant Taylor further alleged that said settlement was a full and complete settlement and discharge of all claims of the plaintiffs against him growing out, or claimed to have grown out, of the matters set forth in this action; that the complaint in said action, the settlement of which was set up in the answer in the present case, contained specifically the same allegations as the complaint in the present action, and covered in its claims the sales and transactions, which were designated by letters A and B in the complaint in the present action.

To this separate defense set up in the answer in the present action a demurrer was interposed upon the ground that it did not state a cause of action, which demurrer was overruled at Special Term, where an opinion was written holding that such defense was a bar to the present action, but that it was competent for the plaintiffs to show on the trial facts and circumstances, if such existed, from which an agreement might be inferred.

*Francis C. Barlow,* for the appellants.

*John A. Mapes,* for the respondents.

Barrett, J.:

The question here is whether the plaintiffs' right of action was single and entire, or whether they had a separate and distinct cause

of action for each bill of goods sold. The action is what would formerly have been called an action on the case in the nature of conspiracy; and it is well settled that the damage to the plaintiff, and not the conspiracy, is the gist of such an action. (*Tappan* v. *Powers*, 2 Hall, 277; *Jones* v. *Baker*, 7 Cow., 445; *Hutchins* v. *Hutchins*, 7 Hill, 104; *Buffalo Lubricating Oil Co.* v. *Everest*, 30 Hun, 588; *Verplanck* v. *Van Buren*, 76 N. Y., 259.)

"The allegation of conspiracy," as was said in *Buffalo Lubricating Oil Company* v. *Everest*, "between the defendants to commit the act complained of, is of no importance so far as it respects the cause and ground of action, * * * if there be a failure to prove the combination, then the plaintiff is entitled to a verdict against either defendant upon whom an unlawful act is proved to the damage of the plaintiff." In *Verplanck* v. *Van Buren* (*supra*) FOLGER, J., said that "in such action the evidence of a technical conspiracy is not essential. The damage is the cause of action, and the conspiracy mere matter of aggravation." (Citing *Skinner* v. *Gunton*, 1 Wm. Saunders, 228c, note 4.) Proof of conspiracy is only essential when a verdict is demanded against two or more defendants. And the practical importance of such proof arises from the rule, which thereupon permits the plaintiff to give in evidence the declarations of co-conspirators as against each other, while engaged in furthering the conspiracy.

It is apparent, therefore, that the cause of action set up in the complaint was not single and entire. The goods fraudulently obtained were purchased on many different days between August and November, 1882. Each purchase was a distinct and several act of fraud for which the plaintiff was entitled to maintain a separate action. This was not affected by the defendant's general purpose, nor by the fact that such purpose was continuous. The rule laid down in *Secor* v. *Sturgis* (16 N. Y., 548) was misunderstood or misapplied at the Special Term. The court, in *Secor* v. *Sturgis*, said "But it is entire claims only which cannot be divided within this rule, those which are single *and indivisible in their nature*. The cause of action in the different suits must be the same. The rule does not prevent, nor is there any principle which precludes the prosecution of several actions upon several causes of action; * * * a party upon whose person or property successive distinct trespasses have

been committed may bring a separate suit for every trespass." And again: "The true distinction between demands or rights of action which are single and entire and those which are several and distinct is, that the former immediately arise out of one and the same act or contract, and the latter out of different acts or contracts. Perhaps as simple and safe a test as the subject admits of, by which to determine whether a case belongs to one class or the other, is by inquiring whether it rests upon one or several acts or agreements." In the present case each sale was, as already observed, separate and independent. Such sales were made upon a credit of from two to four months. For a part of these sales the plaintiffs received twenty-seven separate and distinct promissory notes, dated on different days and maturing on different days. It is plain, as was said in *Zimmerman* v. *Erhard* (83 N. Y., 78), that these "different sales did not constitute one entire and indivisible demand, and the plaintiffs could bring separate actions for each separate sale, or for all of them together, as they saw fit. The different demands were like several promissory notes, or several distinct trespasses, and in the nature of separate and distinct transactions, for each of which a separate action might be brought." Of course, if the gist of the action here was the conspiracy, it might well be deemed "single and entire." It could, perhaps, then be argued that there was but one conspiracy, and that each purchase in furtherance thereof was but an element of the general damages. That theory fails when the conspiracy is eliminated as the gist of the action. So, upon the theory of separate and distinct frauds, if any one purchase on any given day had embraced several items, the principle contended for by the defendants would, doubtless, apply to each of such items. (*Farrington* v. *Payne*, 15 Johns., 432; *Smith* v. *Jones*, id., 229; *Miller* v. *Covert*, 1 Wend., 487.) But where separate and distinct purchases were fraudulently made upon different days, we have no doubt that a separate cause of action accrued to the plaintiffs for the damages resulting from each purchase as an independent act of fraud.

We think, too, that it was the intention of the parties to limit the settlement set up in the answer to the particular claim embraced in the then pending action. It will be observed that that action was against but one of the present defendants, and was simply for the conversion of certain specified goods, valued at upwards of $12,000.

There was no formal charge of conspiracy, but the defendant was sought to be held because of his alleged connivance with the purchasers. The suit was settled for $4,000 in the defendant's notes, which were received (according to the tenor of the instrument then signed by the plaintiffs) " in full settlement and discharge of all claims embraced in " that action and " of the cost thereof."

It was held in *O'Beirne* v. *Lloyd* (43 N. Y., 251), that parties may make a valid agreement to sever an entire demand and compromise the part sued for, leaving the residue to stand, and that such a reservation may be inferred from the circumstances. We think such a reservation should be here inferred. The action was settled for about one-third of the sum claimed. It was an action against Taylor alone. It proceeded upon the legal theory that certain goods belonging to the plaintiffs, the title to which had not passed owing to the vendor's fraud, were found in Taylor's possession, and that he had received them, not as a *bona fide* purchaser, but with notice of the fraud. The plaintiffs thereupon alleged a demand of the goods from Taylor, and a refusal to deliver them to their damage some $12,000. What was intended to be settled was that specific claim for the refusal to deliver to the plaintiffs upon demand the specific goods found in Taylor's possession. That, and nothing else ; certainly not a claim against Taylor and the purchasers of the goods for damages resulting from a series of frauds, one of which happened to cover the particular goods embraced within the action against Taylor alone for conversion.

We think, therefore, that the judgment appealed from should be reversed, with costs, and the plaintiffs' demurrer to the twentieth clause of the defendant's answer be sustained, with costs.

VAN BRUNT, P. J., and BARTLETT, J., concurred.

Judgment reversed, with costs, and the plaintiffs' demurrer to the twentieth clause of the defendant's answer sustained, with costs.