(31 Abb. N. C. 314; 9 Misc. Rep. 34.)

## KUJEK v. GOLDMAN.

(Common Pleas of New York City and County, General Term.    June 4, 1894.)

1. DECEIT—EVIDENCE.
    An action will lie against one who induced plaintiff to marry a woman by false representations that she was virtuous, when in fact she was at the time pregnant by defendant, as the woman's confinement, after marriage, resulting from such pregnancy, damages plaintiff.    25 N. Y. Supp. 753, affirmed.    Pryor, J., dissenting.

2. HUSBAND AND WIFE—ACTIONS FOR TORT.
    A husband cannot sue his wife to recover damages for deceit by which he was induced to marry her.

Appeal from city court, general term.

Action by Johann August Kujek against Manassah L. Goldman, impleaded.    From a judgment of the city court (25 N. Y. Supp. 753) affirming a judgment entered on a verdict in favor of plaintiff, defendant appeals.    Affirmed.

Action by the husband against his wife and another, with whom she sustained concubinal intimacy before her marriage, to recover damages for fraud and deceit, the defendants having conspired to induce the plaintiff, by means of false representations of the woman's chastity, to marry her, and the plaintiff, relying upon the truth of the representations, and believing her to have been chaste, having married the woman.    At the time of the marriage the woman, was pregnant by her codefendant, and this action was instituted subsequent to her accouchement.    The marriage was not annulled, and judgment was recovered against the male concubinary and conspirator only, the action having been abandoned as against the other defendant.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Wheeler H. Peckham, for appellant.
August P. Wagener, for respondent.

BISCHOFF, J.    Though the defendant (appellant) on the trial denied his concubinage with the plaintiff's wife, the paternity of the child born subsequent to the marriage, and the making of any representation of the woman's chastity to induce the plaintiff to marry her, the testimony of the plaintiff and of his wife was abundant to establish the facts denied, and conspicuously denounced the denials as untrue.    Nor were the representations mere matter of opinion. The illicit relations which had subsisted between the defendant (appellant) and the woman endowed the former with personal knowledge of her defilement.    When, therefore, he represented her to be chaste, he was aware that the contrary was the fact.    Hence his representation was a misrepresentation of a fact.    It was the province of the jury to determine the credibility of the witnesses called to support or refute the allegations of the complaint, and, the jury having accepted the facts as they were testified to by the plaintiff and his wife, we may marvel at the former's credulity, but are concluded upon the facts by the judgment of affirmance of the court below, in the presence of evidence, however slight, or however incredible it may seem to us, which tends to support the verdict in its essential particulars. The action was not maintainable by the plaintiff against his wife, because of her participation in the fraud perpetrated upon him.    The

common-law unity of husband and wife operates to preclude either spouse from successfully maintaining an action for damages in tort against the other. 9 Am. & Eng. Enc. Law, p. 823; Dicey, Parties, c. 16, rule 67, p. 297; Schultz v. Schultz, 89 N. Y. 644, reversing 27 Hun, 27; Abbott v. Abbott, 24 Am. Rep. 27; Stew. Husb. & Wife, § 53. The legal incapacity of the wife to be joined as a codefendant, however, did not exonerate the defendant (appellant). Joint tort feasors may be proceeded against severally as well as jointly (Cooley, Torts [2d Ed.] p. 153; Dicey, Parties, c. 25, rule 98, p. 448); and neither can object because the other's liability is not sought to be enforced (Dyett v. Hyman, 129 N. Y. 351, 29 N. E. 261). At common law the husband was liable civiliter for his wife's torts, whether committed by her before or during marriage (Dicey, Parties, c. 30, rule 107, p. 477; 2 Lawson, Rights, Rem. & Pr. p. 1329; Cooley, Torts [2d Ed.] p. 131; Schouler, Husb. & Wife, § 130 et seq.; Tyler, Inf. p. 359 et seq.; Holtz v. Dick, 51 Am. Rep. 791–794; Rowe v. Smith, 45 N. Y. 230; Baum v. Mullen, 47 N. Y. 577); but this liability has been radically changed, and he is no longer liable for her torts, unless committed by actual coercion or instigation of the husband (Laws 1890, c. 51).

The evidence was abundant to establish the collusive character of the representations made by the plaintiff's wife and the defendant (appellant) to induce the plaintiff to conclude marriage with the woman; but, assuming that this was not so, it yet remained that the defendant (appellant) made the false and fraudulent representations upon the faith of which the plaintiff assumed the marriage relation, with all the obligations of the husband which the marriage status implies. Hence, though the conspiracy charged was not proved, the action was maintainable, and a recovery therein sanctioned, provided legal damage was shown. "Where the action is brought against two or more concerned in the wrong done, it is necessary, in order to recover against all of them, to prove a combination or joint act of all. For this purpose, it may be important to establish the allegation of a conspiracy. But if it turn out on the trial that only one was concerned, the plaintiff may still recover, the same as if such one had been sued alone. The conspiracy or combination is nothing so far as sustaining the action goes, the foundation of it being the actual damage done to the party." Hutchins v. Hutchins, 7 Hill, 104. "But if there be no evidence of conspiracy, the plaintiff may recover against one alone, where there is sufficient evidence against him, though not enough against the other. This being an action founded in tort, one defendant may be found guilty, and the other have a verdict in his favor. The damage here is the gist of the action, not the conspiracy. The plaintiff showed damage, and, if it resulted from the wrongful acts of the defendants, or either of them, the plaintiff was entitled to recover." Jones v. Baker, 7 Cow. 445. See, also, Sheple v. Page, 12 Vt. 519, and Lee v. Kendall, 56 Hun, 610, 11 N. Y. Supp. 131.

A more serious question arises as to whether or not the plaintiff has established a legal right to recover at all, as against appellant.

Not every wrong perpetrated by one person upon another is actionable. To be actionable the wrong must be accompanied by an injury to the person, reputation, property, or marital rights of the plaintiff. For the wounded moral sensibility of a person, unaccompanied by an injury to his person, reputation, property, or marital rights, the law will not afford relief by way of damages. A mere moral outrage inflicted by one person upon another is injuria sine damno, and the legal aphorism, "ubi jus ibi remedium" (Broom, Leg. Max. [8th Ed.] p. 191), must be accepted with the qualification that it applies only to a legal right as distinguished from a moral right (Cooley, Torts, [2d Ed.] p. 20; 1 Suth. Dam. § 3. Accordingly, when the wrongful act complained of is not cognizable in law as one for which damages will be awarded, the action is not maintainable (Bank v. Ten Eyck, 48 N. Y. 305; People v. Stephens, 71 N. Y. 541; Knapp v. Roche, 94 N. Y. 329); but the husband is entitled to compensation for the loss of the services of his wife (Uransky v. Railroad Co., 118 N. Y. 304, 23 N. E. 451; Blaechinska v. Howard Mission, 130 N. Y. 497, 29 N. E. 755), and of such services the plaintiff was deprived by the accouchement of his wife, owing to her premarital pregnancy by the defendant. The injury to the plaintiff's property in his wife's services was inflicted simultaneously with the marriage induced by the fraud of the defendant (appellant). Postmarital accouchement of the wife indicates in a degree the extent of the injury. However sordid a mercenary consideration of the facts may seem, and however repugnant it may be to relieve the plaintiff by the award of damages for his wife's premarital incontinence, the novelty of the case should not be permitted to serve as a shield to the perpetrator of the fraud while the facts may be brought within the operation of legal principles which will sustain the recovery; and, were it necessary to support the cause of action on the technical ground of loss of services alone, we are not prepared to say the action would not lie; but such support is by no means necessary to the validity of the judgment, because, within the law, the damage done plaintiff by appellant is a personal injury, and, as such, may be redressed without resort to any technical fiction of the common law. Our Code (section 3343) classifies injuries as "injuries to property" and "personal injuries," and, while so classifying, wisely does not attempt a definition thereof. It has adopted practically the classification of common-law actions in rem and in personam. The Code says:

"Personal injury includes, libel, slander, criminal conversation, seduction and malicious prosecution; also assault, battery, false imprisonment or other actionable injury to the person either of the plaintiff or of another."

Practically, after enumerating certain wrongs denominated "personal injuries," the Code, with a flexibility born of common-law wisdom, gives a test to determine what belongs to the classification "or other actionable injury to the person either of the plaintiff or of another." The test to be applied is: If an injury to the person, either of the plaintiff or of another, be actionable, it is a personal injury. The marital relation gives to the husband, as well

as to the wife, conjugal duties and rights. The rights and duties are among the most sacred that can be cherished among men, and it would be an anomaly in our law if the disturber of these sacred rights by fraud could not be made to compensate for their loss. The degree of wrong to such a relation, as manifested in the case at bar, can be measured by no rule of pecuniary loss, nor is such loss necessary to be proved to support the action. Hermance v. James, 32 How. Pr. 142; Rinehart v. Bills, 82 Mo. 534; Bennett v. Bennett, 116 N. Y. 584, 23 N. E. 17. The true basis of the action is the loss of consortium, or the right of a husband to the conjugal society of his wife, and, if the husband can maintain an action for enticing away his wife, he certainly ought to be permitted to recover under the conditions existing in the case at bar. He certainly is just as much deprived of the comfort, aid, and society of his wife in the latter as in the former case, and, indeed, the degree of injury may be much greater. The novelty of the action may be accounted for from the fact that the enabling acts relating to the rights of husband and wife and married women have, while enlarging the rights and privileges of the married woman, at the same time relieved the husband from responsibilities and duties which by common law were borne by him. These enabling acts have also given to the husband rights which may entitle him to bring actions where he otherwise would not have the right to bring them. At common law, while the ordinary actions were provided for by appropriate forms, there was also the right to have a special action on the case when circumstances transpired which could not be brought within the forms of actions then existing. This was done that there might be no wrong without proper remedy, either by law as settled, or within the province of the court to settle, to meet appropriately the facts of the proposed action. It is therefore not strange in this age, wherein the complexities of business and social life continually present new problems to solve, that facts should arise requiring substantially an application of the principle underlying the theory of the action on the case at common law to new facts and circumstances as they may present themselves to the courts. The right to so consider the matter we believe to have been expressly provided for by the Code in its classification of personal injuries as indicated herein, and while, if necessary to do so, we might uphold the judgment in this action upon the technical fiction of loss of services, we prefer to place it, where we have no doubt it properly belongs, as a personal injury, and as directly affecting the true basis of such an action; that is, the loss to the husband of his full enjoyment of the conjugal society of his wife because of the tort or fraud of the defendant. The defendant (appellant) cannot be permitted to avail himself of the plaintiff's ratification of the marriage upon discovery of the fraud. The right to repudiate the marriage was personal to the plaintiff. His ratification of it may have rendered the marriage indissolvable, but, in analogy with the general rule, the plaintiff was permitted to affirm the marriage contract, and to insist upon reparation for the injury inflicted by the fraud. It does not rest with the perpetrator of the fraud to insist that his victim should

have availed himself of particular means for extrication from his predicament. No error is presented by any exception in the record. The judgments of the general and trial terms of the court below should be affirmed, with costs.

DALY, C. J., concurs.

PRYOR, J. (dissenting). The late moment at which the prevailing opinion is submitted to me precludes the possibility of an elaborate argument in support of my dissent. I must be content with a simple statement of the propositions of law deemed antagonistic to the decision of the majority. The action is for deceit, and the false representation alleged is of the chastity of the woman, whereby the plaintiff was induced to marry her. Is actionable fraud predicable of such a falsehood? .An affirmative answer to the inquiry is authorized by no dictum in the books or adjudication in the reports.

If it be said, "ubi jus ibi remedium," still "an injury cognizable by law must be shown to have been inflicted on the plaintiff." Broom, Leg. Max. 193. In the constitution of actionable fraud, damage is an indispensable element; but where is the damage to the plaintiff? In the legal sense, damage is pecuniary detriment. The law knows no measure or recompense for fraud otherwise than by money. Of such damage, what has the plaintiff suffered? It is answered, In deprivation of the consortium and conjugal service. Waiving the fact that no loss of consortium ensued from the fraud,—the plaintiff continued to cohabit with the woman after discovery of the fraud,—the loss of service, if any, was not the effect of a violation of plaintiff's marital right. At the time of the false representation, the woman was not his wife. Supposing that, upon disclosure of the deceit, he had repudiated her, that would not have been in consequence of any wrong done him as husband, for at the time of the wrong he was not a husband. On the other hand, though he kept the woman after discovery of the fraud, and by reason of her pregnancy was subjected to loss, that loss was still not the consequence of any violation of his marital right, for, when the fraud was practiced, he had no marital right. Every action ever prosecuted by a husband for loss of consortium or service—crim. con., alienating affection, enticing away, personal injury—was for a wrong done during the subsistence of the conjugal relation, and in violation of conjugal right. Here, we repeat, the deceit was before the marriage, and was without effect upon marital right. The fraud in question wants the essential elements of an actionable tort.

But for the wrong of which the plaintiff complains the law has provided an appropriate remedy. Enticed by fraud into marriage with a woman unworthy of his embraces, his redress was to repudiate her, and the court would have absolved him from the matrimonial bond. He would have been restored then to the status quo, and his honor left without blemish. Instead, however, of recourse to the redress open to him, he elects to submit to the fraud, and to abide by its consequences. He confesses that he continued for six months to cohabit with the woman after the birth of the bastard

and the discovery of the fraud; and yet he asks the court to compensate him for a wrong which he deliberately ratifies and condones. Antenuptial pregnancy by another than the husband is no ground of divorce after cohabitation with knowledge of the fact. "Cohabitation after knowledge would, of course, be an assent to the fraud." Bigelow, Fraud, p. 553, note 6. If an assent to the fraud in favor of the wife, why not for the benefit of her accomplice? Assent to the act is forgiveness of the actor. Assent eliminates from the act its tortious quality, and no one thereafter is responsible for it in an action for damages. If, indeed, the plaintiff were the man of outraged sensibility he would fain represent himself, I should be disposed to strain legal principle to the utmost in reparation of his wrong. But, when I consider that he still took the woman to his bosom after revelation of the shocking perfidy she had perpetrated upon him, that he then employed her in a conspiracy to extort money from the defendant, and that now it is through her instrumentality as a witness that he recovers a judgment for $2,000, I cannot but regard the action as an experiment in blackmailing by legal process. My associates view the case differently; but, such being my conviction of its character, I decline to overthrow fundamental and immemorial principles in carrying it to a triumphant consummation.