2005 VT 85

# Jonathan and Charlene Sprague v. Matthew Nally and Harvey Burns

[882 A.2d 1164]

No. 03-489

Present: Amestoy,[1] C.J., Dooley, Johnson, Skoglund and Reiber, JJ.

Opinion Filed July 22, 2005

---

[1] Chief Justice Amestoy was present for oral argument but did not participate in this decision.

*W. E. Whittington* of *Whittington Law Associates, PLLC*, Hanover, New Hampshire, for Plaintiffs-Appellants.

*William H. Sorrell*, Attorney General, and *Eve Jacobs-Carnahan*, Assistant Attorney General, Montpelier, for Defendants-Appellees.

¶ 1. **Reiber, J.** In *State v. Sprague*, 2003 VT 20, ¶ 1, 175 Vt. 123, 824 A.2d 539, we held as a matter of state constitutional law that law enforcement officers must have a reasonable basis to believe that their safety or the safety of others is at risk, or that a crime has been committed, before ordering the driver to exit a lawfully stopped vehicle. We further held that the officer in that case lacked a reasonable

basis for the exit order; that the defendant had not voluntarily consented to leave his vehicle; and that the illegal seizure tainted the defendant's later purported consent to a search of his person, vehicle, and home, thereby requiring suppression of the evidence seized. *Id.* ¶¶ 21-22, 30-34. Following our decision, Jonathan Sprague, the defendant in *State v. Sprague*, and his wife filed this civil action against the investigating officers for damages resulting from the stop and searches. The officers moved to dismiss the complaint on the basis of qualified immunity, asserting that they had not violated any clearly established federal law or state rights. The trial court granted the motion, and entered a judgment dismissing the complaint with prejudice. For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings.

■ ¶ 2. It is important at the outset to identify the factual basis of the trial court's ruling. When deciding a motion to dismiss for failure to state a claim, the court's "inquiry focuses on the absence of any facts, reasonable factual inferences, and legal bases for recovery alleged in the complaint, attachments thereto, or to matters the court may judicially notice." *Gilman v. Maine Mutual Fire Ins. Co.*, 2003 VT 55, ¶ 20, 175 Vt. 554, 830 A.2d 71 (mem.). The trial court here stated that, for purposes of the motion to dismiss, it was accepting the allegations in the complaint as true and also "accept[ing] as given the facts stated in *[State v.] Sprague*." Thus, although neither party appears to have formally requested it, the trial court in effect took judicial notice of the facts set forth in this Court's opinion in the criminal case, which, of course, involved the same underlying incident that gave rise to the civil action. See V.R.E. 201(c) ("A court may take judicial notice, whether requested or not.").

¶ 3. Sprague does not contend that the trial court improperly took judicial notice of the facts set forth in our prior opinion. Accordingly, he has waived any claim that the court erroneously relied on those facts in granting the motion to dismiss. See *In re Hart*, 167 Vt. 630, 631, 715 A.2d 640, 641 (1998) (mem.) (issues not raised on appeal are waived).[2] We note, as well, that although Sprague made no formal request, he himself relied expressly in his complaint on a number of

---

[2] Sprague did not mention the judicial notice issue in his briefs, and when questioned at oral argument Sprague's counsel stated that he had not requested judicial notice of this Court's opinion in *State v. Sprague*, but otherwise did not present argument that the trial court had relied on improper facts in deciding the motion to dismiss.

findings and conclusions from our opinion in *Sprague*. See *State v. Longe*, 170 Vt. 35, 40 n.*, 743 A.2d 569, 572 n.* (1999) (party may not predicate error on action that the party has induced). Finally, we note the many authorities holding that a trial or appellate court may properly take judicial notice of the facts set forth in a prior appellate opinion in a related case. See, e.g., *Baltins v. James*, 42 Cal. Rptr. 2d 896, 898 n.3 (Ct. App. 1995) (court in legal malpractice action stemming from earlier dissolution proceeding may take judicial notice of prior appellate opinion in the dissolution action); *City of Caldwell v. Roark*, 575 P.2d 495, 497 n.1 (Idaho 1978) (court may take judicial notice of facts set forth in prior opinion in related case); *Bank of Mead v. St. Paul Fire & Marine Ins. Co.*, 275 N.W.2d 822, 825 (Neb. 1979) (trial court properly took judicial notice of, and entered findings of fact based on, two prior related decisions of state supreme court); *Collins v. Collins*, 898 P.2d 1316, 1318 (Okla. Ct. App. 1995) (court "may take judicial notice of its own records and prior opinions in litigation interconnected with the appeal before it").

¶ 4. We turn, accordingly, to the question whether, on the facts thus established (and more fully described in the discussion below) the trial court correctly concluded that Sprague had failed to demonstrate a violation of clearly established law.[3] We have summarized the doctrine of qualified immunity as follows:

> Such immunity protects lower-level government employees from tort liability when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority. Even in applying qualified official immunity to state tort law claims, we use the federal objective good faith standard to prevent exposing state employees to the distraction and expense of defending themselves in

---

[3] Sprague contends as a preliminary matter that, by entertaining defendants' motion to dismiss prior to their answer, the trial court improperly burdened him with the task of disproving the qualified immunity defense. On the contrary, the court was well within its discretion in deciding the issue at the earliest practical moment. See *Crawford-El v. Britton*, 523 U.S. 574, 590 (1998) (in actions against government officials, public interest is best served by "a defense that permits insubstantial lawsuits to be quickly terminated"). Furthermore, once the issue was raised, Sprague had the burden to rebut the qualified immunity defense "by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal citations and quotations omitted).

the courtroom. The outcome of the analysis depends on the objective reasonableness of the official's conduct in relation to settled, clearly-established law. Thus, if the official's conduct does not violate clearly-established rights of which a reasonable person would have known, the official is protected by qualified immunity from tort liability.

*Cook v. Nelson*, 167 Vt. 505, 509, 712 A.2d 382, 384 (1998) (internal quotations and citations omitted).

■ ¶ 5. Sprague has alleged a federal civil rights claim under 42 U.S.C. § 1983, and several state tort claims, based generally on the same underlying acts. Claims brought under 42 U.S.C. § 1983 must be grounded on facts that would establish a violation of federal law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979); *Billado v. Appel*, 165 Vt. 482, 489, 687 A.2d 84, 89 (1996). In evaluating a claim of qualified immunity a court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). "Clearly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, if the official reasonably believes that his or her actions were lawful, the official receives immunity even if a court later determines that they were not. See *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (doctrine accommodates reasonable "mistaken judgments"); *Long v. L'Esperance*, 166 Vt. 566, 571, 701 A.2d 1048, 1052 (1997) (officer's reasonable, albeit mistaken judgment concerning existence of probable cause will not subject him to liability). Similarly, "if the official's conduct does not violate clearly-established rights of which a reasonable person would have known, the official is protected by qualified immunity from tort liability." *Nelson*, 167 Vt. at 509, 712 A.2d at 384.

■ ¶ 6. We turn accordingly to a consideration of Sprague's specific factual claims, considered in light of the foregoing standards. We note at the outset, however, what Sprague does *not* contend. He does not seek to predicate liability upon the investigating officer's unwarranted directive to exit the vehicle. The reason is clear. As we explained in *Sprague*, federal law does not prohibit an exit order following a lawful traffic stop, and Vermont law, while suggestive of a contrary approach, was unsettled until our decision. 2003 VT 20, ¶¶ 13-14. Therefore, the

officer's conduct in effectively ordering Sprague from the vehicle was not violative of clearly established state or federal law.

¶ 7. Sprague's claims are predicated instead on a series of actions by the investigating officer *after* Sprague exited the vehicle. First, Sprague contends that the officer effected an unconstitutional seizure by ordering him to sit in the police cruiser without cause. As we noted in *Sprague*, the videotape and transcript of the exchange reveal that the officer stated, "you mind having a seat in my car while I check your license, please?," and that Sprague, in response, started walking toward the cruiser. *Id.* ¶ 2. Even interpreting the officer's statement as an order rather than a request to which Sprague voluntarily acquiesced, the facts do not establish a violation of clearly established law. Numerous federal decisions have held that a reasonable investigation of a traffic stop may include questioning the driver in a police patrol car. See, e.g., *United States v. Hernandez*, 93 F.3d 1493, 1499 (10th Cir. 1996) (fact that questioning took place in patrol car did not transform it into illegal detention); *United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir. 1994) (reasonable investigation includes asking for license and registration and brief questioning in patrol car); *United States v. Rodriguez*, 831 F.2d 162, 166 (7th Cir. 1987) (brief questioning in patrol car may be part of normal investigative procedures). Although other courts have suggested that moving the driver to a patrol car for questioning requires some independent justification, see, e.g., *United States v. Butler*, 223 F.2d 368, 375 (6th Cir. 2000), this position appears to be a minority view, and is certainly not "clearly established." A reasonable officer under the circumstances could have believed, therefore, that he was acting within his authority in questioning Sprague inside the cruiser.

¶ 8. Sprague next contends the officer conducted an unconstitutional search of his person by effectively ordering him to empty his pockets. As we noted in *Sprague*, the officer asked him whether he had "any weapons, knives, sharp anything like that in your pocket? Would you mind showing what you have, quick, before you get in my car?" 2003 VT 20, ¶ 3. Sprague thereupon emptied his pockets, revealing a small packet which, in response to further questioning, he acknowledged contained marijuana. He also acknowledged that he possessed "a pipe and bag." *Id.* Although the trial court in the criminal case ruled that Sprague had voluntarily consented to disclosure of the marijuana and accoutrements, we held that the illegal seizure resulting from the unjustified automobile exit "tainted" the subsequent consent and rendered it ineffective. *Id.* ¶ 31. We further held that the search was not

sufficiently separated in time from the initial illegal seizure to attenuate the taint, and that the defendant's compliance represented as much a submission to authority as the initial vehicle exit.

■ ¶ 9. The question here, however, is not whether Sprague's consent was in fact voluntary, but whether a reasonable officer could have believed that Sprague's disclosure of the marijuana and other information relating to drug use was consensual, in light of the existing law. See *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (in civil rights action against officer for constitutional violation, the appropriate question is whether a reasonable officer could have believed that conduct "was lawful, in light of clearly established law and the information the officers possessed"). Despite our earlier holding, the facts here do not establish that a reasonable officer under the circumstances would have known that his conduct violated clearly established law. As noted earlier, the investigating officer had no reason to believe at the time that ordering Sprague to exit the vehicle was unconstitutional, or that directing Sprague to enter the police cruiser and requesting that he empty his pockets before he entered the cruiser represented an exploitation of the original illegality. Furthermore, nothing in the facts alleged or the criminal record demonstrates any show of physical force, display of a weapon, or other indicia of physical coercion during the officer's conversation with Sprague. See *United States v. Drayton*, 536 U.S. 194, 207 (2002) (holding that there is nothing inherently coercive about police questioning or asking for consent to search); *United States v. Rosborough*, 366 F.3d 1145, 1149 (10th Cir. 2004) (facts tending to show that consent was coerced may include multiple officers, physical contact, display of weapon, or aggressive tone).

■ ¶ 10. Case law demonstrates, moreover, that courts have reached diverse conclusions on the question of voluntariness where, as here, an officer inquires whether a suspect would "mind" or would be "willing" to submit to a search. Some have found such prefatory phrases as "would you mind" to be in the nature of a permissive request, and the suspect's response to be voluntary, while others have found them to be more in the nature of a command, and the subsequent submission to be involuntary.[4] Although under the circum-

---

[4] Compare *United States v. Pena-Sarabia*, 297 F.3d 983, 985-86 (10th Cir. 2002) (finding that defendant's consent to officer's question "[d]o you mind if we come in" was freely given, not a submission to show of authority); and *Stovall v. State*, 553 S.E.2d 297, 299 (Ga. Ct. App. 2001) (suspect's consent to officer's question "[w]ould you mind if I pat you

stances presented here we found the officer's repeated use of the phrase "would you mind" to be more in the nature of an order than a request, *Sprague*, 2003 VT 20, ¶ 32, we do not believe that — in light of the existing law and the circumstances — such a conclusion should have been self-evident to a reasonable officer under the circumstances. We cannot fairly conclude that a reasonable officer under the circumstances would have known that his conduct was a violation of clearly established law. Therefore, we must conclude that the officer's conduct was within the scope of the qualified immunity doctrine.

¶ 11. Sprague also claims that the officer violated his Fourth Amendment rights through continued questioning and a search of his wallet inside the police cruiser, as well as through a subsequent warrantless search of Sprague's vehicle and home, where several marijuana plants were seized. Again, the facts as alleged and as found in the criminal case reveal no physical contact, threats, or outright coercion by the officer, no weapon, and relatively mild verbal persuasion to sign consent forms to the vehicle and home searches. Divorced from the initial illegal exit order — a circumstance that was not reasonably apparent to the officer at the time — the facts do not support a conclusion that any reasonable officer under the circumstances would have known that Sprague's consents were involuntary under settled law. Indeed, where — as here — a trial court finds that a defendant has validly consented to the searches, it is difficult to conclude that a reasonable police officer should have understood the situation to be otherwise. See *Wilson*, 526 U.S. at 618 (where courts "disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy").

¶ 12. Sprague also claims a violation of federal and state rights based on the allegedly secret videotaping by the police of the initial traffic stop, and the subsequent videotaping of the search of his home. However, Sprague cites no authority, nor have we discovered any, holding that the increasingly common practice of police videotaping of traffic stops violates a driver's reasonable expectation of privacy under

---

down for weapons" was voluntary); and *State v. Hansen*, 2002 UT 125, ¶ 58, 63 P.3d 650 (suspect's assent to "permissive question — 'Do you mind if I search'" was not coerced), with *Smith v. State*, 753 So. 2d 713, 715, 719 (Fla. Dist. Ct. App. 2000) (characterizing officer's statement "[d]o you mind lifting up your tongue" as "command" rather than request); and *State v. Dezso*, 512 N.W.2d 877, 879, 881 (Minn. 1994) (holding that defendant's assent to officer's question, "[m]ind if I take a look at your wallet," was involuntary despite use of "nonauthoritative language").

the Fourth Amendment or any other privacy interest. See *Ohio v. Robinette*, 519 U.S. 33, 35 (1996) (noting the use of "mounted video camera" to record details of a routine traffic stop); *United States v. Santos*, 403 F.3d 1120, 1128 (10th Cir. 2005) (adverting to the "increasing availability of videotapes of traffic stops due to cameras mounted on patrol cars"). Thus, there is no basis to find a violation of any clearly established right. Whether the police were authorized to videotape the later search of Sprague's home strikes us as a closer question. Sprague has alleged that he did not consent to the taping, and we question whether a home search — even when consensual — implies a concomitant right to "seize" video images of the search. The question here, however, is not whether the taping was legal, but whether a reasonable officer would have known that it violated clearly established federal or state rights, and we have not been cited to, or discovered, any authority showing this to be the case. Indeed, we note that the United States Supreme Court has stated, albeit in dicta, that while the police may not invite the media to record the execution of a search warrant, "it might be reasonable for police officers to themselves videotape home entries as part of a 'quality control' effort to ensure that the rights of homeowners are being respected." *Wilson*, 526 U.S. at 613. Accordingly, we discern no basis to conclude that the videotaping of the search violated any clearly established rights.

¶ 13. Our conclusion concerning the alleged civil rights violations applies with equal force to the state tort claims based on the same underlying conduct. Although rather vague, the "invasion of privacy," negligence, and infliction of emotional distress claims appear to be predicated largely on the searches of Sprague's person, vehicle, and home, and the videotaping of the vehicle stop and home search. As noted, however, the facts and law do not support a conclusion that any reasonable officer would have known that the searches were involuntary under clearly established law, or that the videotaping violated state or federal rights. Accordingly, the state tort claims predicated on such conduct are barred by the qualified immunity doctrine.

¶ 14. Sprague also alleged in his complaint that the police violated his state and federal rights by damaging personal possessions, dumping belongings on the floor, and making a mess during their search of the home. Settled law supports the proposition that consent to search does not include permission to intentionally damage the things to be searched. See, e.g., *United States v. Osage*, 235 F.3d 518, 520 (10th Cir. 2000) (a "search could be so invasive or destructive as to

go beyond the scope of the search consented to") (internal quotations omitted); *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992) ("general permission to search does not include permission to inflict intentional damage to the places or things to be searched"). The United States Supreme Court has also recognized, however, that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). The test is reasonableness; destruction of property that is not reasonably necessary to effectuate the search may violate the Fourth Amendment. *United States v. Becker*, 929 F.2d 442, 446 (9th Cir. 1991). Courts have also recognized that minor damage incidental to a search will not support a constitutional claim. See, e.g., *United States v. Marquez*, 337 F.3d 1203, 1209 (10th Cir. 2003) (removal of plywood board during search was "de minimis in nature" and did not violate Fourth Amendment); *United States v. Zapata*, 180 F.3d 1237, 1243 (11th Cir. 1999) (damage caused by forced removal of plastic clips to search door panel was de minimis in nature and did not exceed scope of consent). At this stage of the proceedings, however, it is impossible to determine whether the officers' alleged destructive behavior was merely incidental to, or reasonably necessary to effectuate, the search. Accordingly, we conclude that the judgment of dismissal was premature with respect to this claim, and must be reversed. See *Powers v. Office of Child Support*, 173 Vt. 390, 395, 795 A.2d 1259, 1263 (2002) (motion to dismiss should be granted only where "it is beyond doubt that there exist no facts or circumstances that would entitle [plaintiff] to relief").

¶ 15. Finally, Sprague's complaint alleged that his rights were violated when, following the initial search of his home, the officers returned and allegedly forced their way into the home over his wife's objections. We did not specifically address the alleged reentry in *Sprague*. The surrounding factual circumstances, including questions as to whether the officers reasonably believed that the reentry was within the scope of the initial consent, therefore remain open. Accordingly, we hold that the trial court was premature in dismissing this component of the complaint, and that this portion of the judgment must therefore be reversed, and the matter remanded for additional factual development.

*That portion of the judgment dismissing plaintiffs' claims that defendants violated their state and federal rights by destruction of property and reentry into plaintiffs' home is reversed, and the*

*matter remanded for further proceedings. In all other respects, the judgment is affirmed.*