John O'Connor v. Thomas J. Donovan, Jr., No. S0173-10 CnC (Toor, J., Dec. 13, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| JOHN O'CONNOR<br>  Plaintiff<br><br> v.<br><br>THOMAS J. DONOVAN, JR.<br>  Defendant | Docket No. S0173-10 CnC |

RULING ON MOTION FOR SUMMARY JUDGMENT and MOTION FOR
JUDGMENT ON THE PLEADINGS

This is a case brought by a police officer against the local prosecutor, alleging that Defendant has intentionally interfered with Plaintiff's employment, defamed him, and intentionally inflicted emotional distress upon him. Defendant Donovan moves for summary judgment on immunity and privilege grounds, and for judgment on the pleadings as to the last count of the complaint. Plaintiff O'Connor is represented by Kaveh Shahi, Esq.; Defendant is represented by Mark DiStefano, Esq., of the Attorney General's office.[1]

The Allegations

The complaint is very brief, but generally alleges that Donovan, the State's Attorney for Chittenden County, has purposely tried to ruin O'Connor's reputation as a police officer. O'Connor alleges that this is because Donovan used to represent

---

[1] The court notes that in various places within his responsive memorandum of law O'Connor suggests that he needs discovery to flesh out some of the facts. However, he has failed to properly request time for discovery pursuant to Rule 56(f), which requires an "affidavit of the party opposing the motion [explaining why] the party cannot . . . present by affidavit facts essential to justify the party's opposition." Thus, the court does not consider the request. In any case, the further discovery appears to be directed at issues related to Donovan's motives and intent, which the court concludes below are irrelevant as a matter of law.

defendants in drug cases, and O'Connor has been working hard to prosecute such defendants.

Specifically, the complaint alleges that Donovan has met with O'Connor's supervisors at the South Burlington Police Department, to whom Donovan criticized O'Connor's work and suggested he was dishonest. Complaint, ¶ 7. It also alleges that Donovan "used foul and unprofessional language" to O'Connor and "threatened to run him out of Chittenden County and end his career as a police officer." Id., ¶ 8. The complaint goes on to say that Donovan has pursued "a personal vendetta against plaintiff, and in the process has abused the powers of his public office…" Id., ¶ 8. An additional allegation in the claim for defamation is that Donovan has "spread[] false statements, implications, and/or impression (sic) that plaintiff is a bad police officer engaged in dishonest conduct." Id. ¶ 12. The above facts are the entire basis set forth in the complaint for the three causes of action asserted.

The Relevant Facts

Donovan seeks summary judgment on all claims in this case on the basis of qualified and absolute immunity, as well as testimonial privilege. His statement of material facts in support of the motion adds much greater detail to the history of events between the parties. The motion is based upon those additional facts. However, the complaint itself sets forth no such facts, and does not describe or even mention some of the events addressed in Defendant's statement.

Plaintiff's response to the motion denies many of the facts, but does not do so in the manner required by Rule 56: with citations to the record. V.R.C.P. 56(c). For example, he responds to many of the facts by saying "Please see summary of facts in the

2

Opposition Memorandum and the attachments." This is neither what is meant by the rule, nor of much use to the court. The proper response is a *specific* reference to something admissible in evidence, such as a page and line of a deposition or an affidavit, preferably with a direct quote from that document so the court need not hunt for the reference. Clayton v. Unsworth, 2010 VT 84, ¶ 28 (party responding to motion must "identify specific facts, with citations to the record" and "the relevant provisions of [the] documents *must* be referred to")(emphasis in original). As Plaintiff has not complied with the rule, the court deems many of the facts set forth by Defendant to be true.[2] *See* V.R.C.P. 56(c).

Those facts generally set forth that the actions of Donovan at issue are as follows: contacting O'Connor's superior to complain about his conduct; declining to file prosecutions or seek search warrants based on some of O'Connor's affidavits of probable cause; telling O'Connor that if he violated county policy on seeking search warrants only with the approval of a prosecutor, Donovan's office would not work with him again[3]; supporting a deputy prosecutor's request not to work with O'Connor; testifying about some of the above issues (pursuant to subpoena) at a civil trial in a private lawsuit against O'Connor; a slow response from staff in Donovan's office regarding whether they would decline a forfeiture case so that the federal authorities could proceed; and Donovan's

---

[2] In the response to the motion, Plaintiff provides his own version of the facts (many of which are highly conclusory statements about Donovan's state of mind). However, he has not amended the complaint to add such claims, and has not filed a summary judgment motion himself. Thus, the facts he sets forth are mere allegations, not undisputed for purposes of summary judgment.

[3] O'Connor also alleges in his response that Donovan "flew into a rage and screamed obscenities and threats" in this conversation. Plaintiff's Separate Statement of Undisputed Facts, ¶ 10. *See also* Complaint ¶ 8 (alleging that Donovan used "foul and unprofessional language"). True or not, such behavior does not constitute a tort or a violation of law.

report to one of O'Connor's colleagues that a Deputy State's Attorney had complained of O'Connor being rude to her.

Donovan also asks the court to rule on a number of other allegations made by O'Connor in discovery, although Donovan disputes them. It is clear from Plaintiff's response that he does in fact make these allegations, despite the fact that they are not set forth in the complaint. As to these, because Defendant has raised them, the court treats them as allegations and treats the motion as one to dismiss rather than for summary judgment. In other words, the court will presume them to be true for purposes of the motion.

Those allegations are as follows; that Donovan "instigated" two private lawsuits against O'Connor; that Donovan did not tell the whole story when he testified in the civil trial; that Donovan talked to the opposing party's attorney about his testimony before testifying; that Donovan "leaked" a letter written by his predecessor also criticizing O'Connor's work; that Donovan has questioned O'Connor's honesty to his own staff and to O'Connor's supervisors; that attorneys in Donovan's office have shared information harmful to O'Connor with defense attorneys; that Donovan "leaked" to a defense attorney a meritless complaint Donovan had filed with O'Connor's superiors, as well as materials regarding the resulting internal police department investigation; and that Donovan said negative things about O'Connor when contacted by the State Police when they were considering O'Connor for the Vermont Drug Task Force.[4]

---

[4] Defendant lists other allegations which the court finds are duplicative of some of the undisputed facts and does not list separately here.

4

I. <u>Absolute and Qualified Immunity</u>

For public policy reasons, government officials are at times protected from suit by doctrines of immunity: either "absolute immunity" or "qualified immunity." Donovan argues that he is entitled to both types of immunity.

The Vermont Supreme Court held in 1989 that under Vermont law the highest executive officers of the State, including the Attorney General, had absolute immunity for "any and all" actions taken "within the individual's authority." <u>Levinsky v. Diamond</u>, 151 Vt. 178, 185 (1989). In that case the Court distinguished between the immunity available for state law claims and the immunity available for federal claims brought under 42 U.S.C. § 1983. <u>Id</u>. at 192-93. It applied the absolute immunity available to all executive acts, whatever their nature, to the former; it applied a combination of absolute and qualified immunity, depending upon the specific acts in question, to the latter.

However, in 1990 the Court stated in a footnote that it was overruling <u>Levinsky</u> "to the extent that . . .[it] consider[ed] prosecutors acting in their quasi-judicial role as executive rather than judicial officers." <u>Muzzy v. State</u>, 155 Vt. 279, 280 (1990). It is not entirely clear what the Court meant by that brief comment. As best this court can tell, it was apparently intended to reject the distinction between state and federal claims, and to apply the prosecutorial immunity doctrine rather than the "executive officer" doctrine when the executive in question is a prosecutor. Thus, prosecutors are entitled to either absolute or qualified immunity based upon the nature of their actions, rather than absolute immunity for all actions within the scope of their authority.

Prosecutors are entitled to absolute immunity for actions "associated with the judicial phase of the criminal process," so long as they are "within the general authority

5

of the officer." Muzzy, 155 Vt. at 280. The "quasi-judicial phase" includes "any act closely associated with litigation or potential litigation, but does not cover administrative functions." Id. Decisions to prosecute (or not), to negotiate pleas (or not), and to seek evidence (or not), are protected by absolute immunity. Id. at 280; Levinsky, 151 Vt. at 193-94; Czechorowski v. State, 2005 VT 40, ¶ 10, 178 Vt. 524.

Administrative functions of a prosecutor are protected by qualified immunity. Qualified immunity applies when a public official is acting within the scope of his or her employment and authority, acting in good faith, and performing discretionary acts. Sprague v. Nally, 2005 VT 85, ¶ 4, 178 Vt. 222. The idea is to "prevent exposing state employees to the distraction and expense of defending themselves in the courtroom" if they are acting within the range of what a reasonable person in their position could do. Id. "[I]f the official's conduct does not violate clearly-established [law] of which a reasonable person would have known, the official is protected by qualified immunity from tort liability." Id.

"Good faith" is used in what can be a confusing manner under this doctrine: it refers not to the official's intent or state of mind, but to what a hypothetical "reasonable person" in the situation might believe to be lawful. "Good faith exists where an official's acts did not violate clearly established rights of which the official reasonably should have known." Sabia v. Neville, 165 Vt. 515, 521, 687 A.2d 469, 473 (1996). "The viability of this defense depends on the objective reasonableness of the official's conduct in relation to settled, clearly-established law." Hoffer v. Ancel, 2004 VT 38, ¶ 12, 176 Vt. 630 (internal quotation omitted). The doctrine applies to state tort claims as well as alleged violations of statutes or constitutional provisions. Sprague, 2005 VT 85, ¶¶ 5 and 13.

The purpose of qualified immunity "is to ensure that public officials will enjoy broad decision making discretion free from the threat of liability for errors of judgment." Czechorowski, 2005 VT 40, ¶ 21. It "gives ample room for mistaken judgments." Malley v. Briggs, 475 U.S. 335, 343 (1986).

## A. The Undisputed Actions

Some of the undisputed acts of which O'Connor complains are clearly within the scope of the State's Attorney's quasi-judicial role. Decisions about what cases to prosecute or what warrants to seek, and deciding whether to initiate or decline forfeiture proceedings, are precisely the types of actions that the cases make clear are protected by absolute immunity.

Other actions that Donovan took are more administrative in nature: reporting concerns about a police officer's conduct to his superior, decisions about deputy prosecutors' job responsibilities, and requiring a police officer to follow office policies if he wished the office to work with him. These actions are protected only by qualified immunity. However, such immunity clearly applies here, as these actions are discretionary ones that are undoubtedly within the scope of Donovan's job and O'Connor has pointed to no "clearly established right" that Donovan has violated. *See*, Livingston v. Town of Hartford, 2009 VT 54, ¶ 14, 186 Vt. 547 (affirming summary judgment where "plaintiff failed to articulate any clearly established right that was violated").

Of yet a different nature is the claim relating to Donovan's testimony at a civil trial. Donovan's testimony pursuant to subpoena was done in his role as a witness like any other citizen served with a subpoena, not in his role as a prosecutor. Thus, neither the absolute nor the qualified immunity related to his position would attach.

7

Testimony in court, however, is separately protected by a privilege applicable to all witnesses in litigation. Restatement (Second) of Torts § 588 (1977)(West, Westlaw through Aug. 2010). Thus, anything Donovan said or did not say while testifying cannot be the basis for liability here.

The court grants summary judgment to Defendant with respect to all of the above claims.

### B. The Disputed Allegations

As noted above, the court will address the motion regarding the disputed facts as one to dismiss. In other words, assuming all the alleged facts to be true, would Donovan be entitled to absolute immunity for those actions? *Accord*, Burgess v. Salmon, 2008 WL 2793874, * 3, No. 2007-411 (April 2008)(mem.)("a plaintiff's claims may appropriately be dismissed for failure to state a claim because the facts as alleged establish immunity as a matter of law").

The allegation that Donovan instigated two civil lawsuits against O'Connor is one that does not trigger absolute immunity. Encouraging private litigation against a police officer is not part of a prosecutor's job. However, O'Connor points to nothing to suggest that it is a violation of law or a basis for tort liability. This allegation will be dismissed for failure to state a claim.

The next allegation is that Donovan did not tell the whole story when he testified in the civil trial, and that he talked to the opposing party's attorney about his testimony before testifying. As noted above, testifying in a private lawsuit as a witness pursuant to subpoena is not part of Donovan's duties as a prosecutor, only his duties as a citizen. Thus, the immunities applicable to his role as State's Attorney do not attach. However,

the court finds no liability that can attach to a witness who talked to a lawyer for one side but not the other before testifying, or a witness who talked to the lawyer about earlier testimony in the case by other witnesses. The privilege applicable to a witness' testimony "also protects him while engaged in private conferences with an attorney at law with reference to proposed litigation." Restatement, *supra*, § 588 cmt. b. O'Connor cites no legal basis for liability for such actions. Thus, although prosecutorial immunity does not attach to Donovan's actions as a witness, he is entitled to dismissal of these claims.

The next allegation is that Donovan "leaked" a letter written to the Chief of Police by his predecessor criticizing O'Connor's work. It is not clear what "leaking" the letter means, and thus the court cannot assess whether the acts in question were in fact part of Donovan's job responsibilities. However, there is also no legal claim asserted here that would create any liability for sharing the letter with others. The allegation fails to state a claim. The same is true of the separate claim that Donovan "leaked" to a defense attorney a complaint Donovan had filed with O'Connor's superiors, as well as materials regarding the resulting internal investigation resulting therefrom. O'Connor cites no law or regulation that has been violated. As he cites no legal duty to keep such materials secret, there is no basis for liability for such disclosure.

Next O'Connor alleges that Donovan has questioned O'Connor's honesty to his own staff and to O'Connor's supervisors. To the extent that such discussions occurred, they are discretionary administrative matters within the scope of Donovan's position. O'Connor points to no clearly established law that such conduct would violate. If a State's Attorney has questions about a police officer's honesty, discussing those concerns

with staff and the officer's supervisors would be precisely what one would expect him to do in properly discharging his duties. These acts are protected by qualified immunity.

O'Connor also alleges that attorneys in Donovan's office have shared information harmful to O'Connor with defense attorneys. What others in Donovan's office have done is not a basis for liability for O'Connor, and O'Connor again points to no clearly established law that would be violated by such acts.

Finally, O'Connor alleges that Donovan said negative things about O'Connor when contacted by the State Police while they were considering O'Connor for the Vermont Drug Task Force. Responding to requests for information about an officer being considered for a position by the State Police is within Donovan's discretionary administrative duties as head of the State's Attorney's Office. Again, O'Connor fails to identify any clearly established law that would be violated by such discussions. Donovan is thus entitled to qualified immunity for such actions.[5]

O'Connor argues that many, if not all, of the alleged actions taken by O'Connor were done with ill will, to harm O'Connor professionally. However, even if true, a bad motive does not transform otherwise immune actions into ones to which liability can attach. "[I]t is possible that an official will act out of improper motives and, nevertheless, be protected from state tort claims by official immunity." Cook v. Nelson, 167 Vt. 505, 510 (1998).

---

[5] Although not raised in Donovan's motion, there is one additional allegation raised by O'Connor in his response to the motion. That is a claim that Donovan "made it known" that O'Connor's fellow officers could be "exposed to civil suits for false arrests" if they were participants in cases the office declined. Plaintiff's Opposition at 15. The facts on which this allegation is based are described in O'Connor's responses to interrogatories. They involve his claim that another officer suggested at a meeting that such liability might arise. Plaintiff's Answers to Defendant's First Set of Interrogatories and Requests for Production, No. 9, at. 41. There is no factual support offered for the claim that *Donovan* said this. Even if he did, it would be a discretionary act within the scope of his position as State's Attorney and thus protected by qualified immunity. No violation of O'Connor's rights having been identified, the claim would fail.

The plaintiff in Levinsky argued that the defendant Attorney General had filed charges against the plaintiff "with malice, knowing that the charges were baseless." Levinsky, 151 Vt. at 187. The Court rejected that claim, noting that because the defendant was "protected by absolute immunity, . . . his motive is irrelevant." Id. Likewise, in Muzzy the Court reiterated that "[w]hen a prosecutor performs a quasi-judicial act, his motive for acting is not subject to inquiry in a private suit." 155 Vt. at 281(internal quotation omitted). The same is true when qualified immunity applies. Cook, 167 Vt. at 510 ("defendant in this case is entitled to [qualified] immunity if he acted in *objective* good faith despite the jury's finding that he acted with malice to plaintiff")(emphasis in original).

As the Second Circuit has explained, "it is impossible to know whether the claim is well founded until the case has been tried, and … to submit all officials, the innocent as well as the guilty, to the burden of a trial" would be too great a burden on public officials trying to do their job. Gregoire v. Biddle, 177 F. 2d 579, 581 (2d Cir. 1949), quoted in Levinsky, 151 Vt. at 184. Thus, although a government official should not use his powers to "vent his spleen upon others, or for any personal motive not connected with the public good," the competing policy interests have led courts to the conclusion that it is "better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." Id. *See also*, Muzzy, 155 Vt. at 281-82. Thus, whether Donovan's actions were taken out of malice or sincere concerns, his motives are irrelevant to the application of the immunity doctrine.

## II. The Motion for Judgment on the Pleadings

Donovan also moves for judgment on the pleadings as to the claim for intentional infliction of emotional distress. Based upon its disposition of all claims on other grounds, the court does not reach this question.

## Order

As set forth above, the court treats some aspects of Donovan's motion for summary judgment as a motion to dismiss. The court grants the motion for summary judgment and/or dismissal as set forth above. The motion for judgment on the pleadings is moot. Defendant is directed to submit a proposed judgment within ten days, to which Plaintiff shall have five days to respond pursuant to V.R.C.P. 58(d).

Dated at Burlington this 13th day of December, 2010.

_____
Helen M. Toor
Superior Court Judge